20 P.(2d) 276

MARCHANT v. McDONALD.

No. 3670.

Supreme Court of New Mexico.

Jan. 23, 1933.

Rehearing Denied March 13, 1933.

Merritt C. Mechem, of Albuquerque, for appellant.

George C. Taylor, of Albuquerque, for appellee.

SADLER, Justice.

Plaintiff sued to recover a balance of $4,-107.69, claimed due him under a building contract for the construction of a garage building and auto sales room in the city of Albuquerque. He alleged performance in accordance with the terms of the contract, copy of which was pleaded. The contract provided that it, together with the specifications and drawings, should form the contract. Defendant answered, pleading a copy of the specifications, and denying that the building was constructed in accordance with the contract, plans, and specifications, in this: (a) That, while bound under the contract to construct said building wholly upon the lots of defendant, he had failed so to do by putting the same in part upon West Tijeras avenue; and (b) that he had failed to construct the floor in the garage portion of the building

so as to "pitch to drain" as called for by the plans.

Damages to defendant for the alleged encroachment on the public street were laid at $1,387 and for the claimed defect in construction of the floor at $1,120, for which amounts defendant prayed judgment against plaintiff.

The plaintiff in reply denied all allegations of new matter pleaded by the defendant. The case was submitted to the jury both on the general issue and for special findings. It returned a general verdict for plaintiff for $4,107.69, the amount claimed, and answered such of the special issues tendered as were required under the form of their submission. Judgment was entered pursuant to verdict, and this appeal followed.

An issue was made in the proof as to whether the plans required the entire garage floor to "pitch to drain," or only an area thereof approximately 20x25 feet in dimensions, with sand pit or drain in center where cars were placed for washing. The floor plan consisted of a display room at the front. A parts room and an office immediately adjoining the display room at the rear divided the floor plan into two sections—the display room and the car storage or garage portion of the building. The car storage room occupied by far the greater portion of the floor space of the building.

Upon the map or plan of the building covering the car storage section thereof appeared the legend, to wit:

"5' Concrete Floor
Pitch to Drains"

It was undisputed that only one drain was called for by the plans. It was located underneath a sand trap in the corner of the building appropriated to car washing. It was also an undisputed fact that an area of approximately 20x25 feet in dimensions around this sand trap did pitch to the drain. There was also evidence that, in order to have the entire floor of the garage room pitched to this drain, the front or upper sections of the garage floor would require elevation some six inches, a condition testified as undesirable on a floor devoted to the storage of cars. In addition, a civil engineer who supervised the construction of this building for plaintiff, and who also assisted defendant's architect in the drawing of the plans, explained certain symbols consisting of four small lines about an inch long pointing toward the sand trap as indicating the portion of the floor which was to pitch toward the drain, and that they constituted the only marks or symbols indicating drainage anywhere on the map.

The jury, both by its general verdict and by its answer to one of the special issues submitted, found the plans did not require the entire floor to pitch to drain. There was substantial evidence to support this finding, and the ambiguity as to the true meaning of the plans on this question warranted the court in submitting to the jury their proper interpretation.

The next point relied upon for reversal is not so easy of solution. It relates to a claimed encroachment. We think it must be taken as an admitted fact in the case, as

tried, that an encroachment exists. The form of the general charge and the special issues submitted seem rather to take such fact as granted; it being left to the jury to say what damage, if any, resulted to defendant from the encroachment. And, as affecting the question of damage, the court charged the jury that the decree entered by the district court of Bernalillo county in a certain suit theretofore prosecuted by the plaintiff, Marchant, against the defendant, McDonald, and the city of Albuquerque, involving the question of such encroachment, "fully and completely protects the possession, use and enjoyment of the defendant and his successors in title."

The following special issue, at defendant's request, was submitted to the jury and answered by it as indicated, to wit: "If you find that the defendant has been damaged by reason of the building having been placed in part upon West Tijeras Avenue, how much do you find that the defendant has been damaged by the building being so built? Answer: None."

The decree in said cause No. 18131 was introduced in evidence by the plaintiff without objection on the part of the defendant. As above stated, this separate suit was prosecuted by the plaintiff herein against the city of Albuquerque and the defendant herein. The city of Albuquerque filed its answer in said suit, and the defendant, McDonald, defaulted. The decree entered recited that there was a projection at the northeast corner of the building of 0.31 feet into West Tijeras avenue. It adjudicated, as the city ad-

mitted, that said projection was without damage to the city, and that the same, as consented to by the city in its answer, might remain "as now constructed and may remain so extending, projecting and jutting into West Tijeras Avenue as aforesaid, as long as said building shall stand as now constructed; and until such time as said building shall be torn down, removed and destroyed."

It was further adjudicated, nevertheless, that the city had not waived or disclaimed its right and title to that portion of the street covered by the projection, and should never be barred or estopped from asserting and claiming its right and title thereto. In addition, the decree awarded personal judgment against the defendant, McDonald, in the sum of $3,993.69, with interest.

Within thirty days the defendant, McDonald, moved to vacate the default entered as to him upon the ground that the complaint in said cause had sought no money judgment against him; that he had a good and meritorious defense against any money demand, in that he was not indebted to the plaintiff, Marchant, and in that said plaintiff had failed to construct the building upon land owned by said defendant, as in his contract he had agreed to do, but had erected the same in part upon a public street of the city of Albuquerque. The default against McDonald by mutual consent was set aside with the proviso in the order setting it aside "that this order shall in nowise affect or invalidate the judgment and decree entered in said

cause against the defendant, the city of Albuquerque, a municipal corporation."

Perhaps the major portion of the appellant's brief is devoted to an able discussion of the effect of this decree upon the rights of the parties. It is strongly argued that the projection, though slight, renders unmarketable the title of defendant to the lot area occupied by the building in question; that the decree against the city in cause No. 18131 is not res adjudicata of the right of the city or of adjoining owners to have the projecting portion of said building removed from the city street.

When and under what conditions the slight encroachment of a building or its appendages into a public street renders unmarketable the title to the area occupied by such building presents an interesting field of discussion. The New York courts, due perhaps to the density of population and consequent increasing value of the slightest area of soil, have explored the field to a greater extent than have the courts of any other state. Even in New York there has been a reversal of position on the part of the courts due in large measure to a reversal of policy on the part of municipalities with reference to encroachments. A well-edited annotation discussing the leading cases will be found in 57 A. L. R. 1451. One of the leading cases cited in the note is Acme Realty Co. v. Schinasi, 215 N. Y. 495, 109 N. E. 577, L. R. A. 1916A, 1176. For other instructive cases see Vassar Holding Co. v. Wuensch, 100 N. J. Eq. 147, 135 A. 88; Salter v. Beatty, 101 N. J. Eq. 86, 137 A. 848; Harrington Co. v. Kadrey,

105 N. J. Eq. 389, 148 A. 3; and Mertens v. Berendsen (Cal. App.) 292 P. 1005, reversed in an opinion reported at 213 Cal. 111, 1 P. (2d) 440, in which the Supreme Court of California reviews the leading New York cases.

But, for reasons to be disclosed, we do not find it necessary to determine generally the extent to which an encroachment on a public street of a privately owned building renders title thereto unmarketable, nor the proper limits to the effect of the decree against the city under the doctrine of res adjudicata. As hereinabove pointed out, the court instructed the jury to the effect that the decree against the city in cause No. 18131 fully and completely protected the possession, use, and enjoyment of the defendant and his successors in title. The defendant interposed only a general exception to this instruction. This general exception reserved no objection to the instruction, nor pointed out to the court any vice therein. James v. Hood, 19 N. M. 234, 142 P. 162; State v. Gonzales, 19 N. M. 467, 144 P. 1144; State v. Orfanakis, 22 N. M. 107, 159 P. 674; Spencer v. Gross, Kelly & Co., 22 N. M. 426, 163 P. 1087; State v. Carabajal, 26 N. M. 384, 193 P. 406, 17 A. L. R. 1098; Henderson v. Dreyfus, 26 N. M. 541, 191 P. 442.

It therefore became "the law of the case" (with such material bearing on the defendant's right to damages for the encroachment as the circumstance to be mentioned might legitimately have) that the decree in question covering the projection of said building into the true line of the sidewalk 0.31 feet fully and completely protected "the posses-

sion, use and enjoyment of the defendant and his successors in title."

Since the only evidence before the jury on the question of damages by reason of the encroachment related to the cost of removing the projecting portions of the building and restoring them on the true line, and the court in effect instructed the jury that, by virtue of the decree against the city, the defendant would be spared this expense, which charge became the law of the case, it is easy to understand the jury's finding both in its general and special verdicts that the defendant was not damaged.

Actually, the specifications, which were made a part of the contract, made it the duty of the owner to establish lot lines, the contractor's responsibility arising only if he failed to locate the building according to stake and grade given by the owner. The owner (defendant) did employ his private surveyor, who staked the lines for the building. Both the contractor (plaintiff) and his superintendent of construction testified that the building was located on the exact lines established for them by the owner.

If the owner himself made a mistake in establishing lot lines, the contractor in following lines thus established would be free from liability to the owner. But here again is the case controlled by the accepted theory of its submission to the jury. Unquestionably, and without objection on the plaintiff's part, the case went to trial and to the jury on the theory of plaintiff's responsibility for damages for the encroachment, if damages should be found to exist. This is understandable from the frank statement in his brief by plaintiff's counsel that he learned for the first time during the trial that the contract required the owner to establish lot lines, and that he did in fact establish them. So the verdict cannot be explained on the theory of a finding by the jury that it was the owner's duty to establish the lines and that the contractor placed the building on lines thus established. The court did not so submit the case to the jury.

Considered, however, on the theory of its actual submission, and taking it as the established law for this case that the defendant and his successors in title are fully and completely protected in the possession, use, and enjoyment of said building as constructed, we can see nothing wrong with the jury's finding that defendant is not damaged by reason of the encroachment.

 Nor do we find error harmful to defendant in the court's denial of his motion, interposed when the case closed, to dismiss the complaint without prejudice to plaintiff's right to bring a new action or to defendant's right to recoup therein his damages by way of set-off or counterclaim. The motion was grounded on the view that the plaintiff, having alleged a full compliance with the contract in order to recover, must show either literal or substantial compliance; that proof which disclosed the encroachment here shown of a portion of the building into the line of the sidewalk was not even substantial compliance.

In actions upon building contracts, a majority of the courts apply the doctrine of substantial performance without questioning the propriety of the form and action. 6 R. C. L. 969. The court below properly instructed the jury on the doctrine of substantial compliance as applied to contracts of this kind. Whether the contract has been substantially performed is a mixed question of fact and law, though at times it presents itself as a matter of law. 10 Brit. Rul. Cas. 760. Ordinarily, the true measure of recovery is the sum stipulated in the contract less the damages sustained by the failure strictly to perform. See annotation at 23 A. L. R. 1435, supplemented in 38 A. L. R. 1383, and 65 A. L. R. 1297. These damages are, usually, the expense of making the work conform to the requirements of the contract. 10 Brit. Rul. Cas. 718 (765).

But where, as here, the breach claimed is not in the employment of shoddy materials or unskillful workmanship, but rather in making a defective alignment of the building resulting in a slight encroachment, and the jury returns a verdict of no damage (not illogical under an instruction that the decree mentioned affords complete protection to defendant's possession, use, and enjoyment of the building as constructed), the error, if any, in the court having refused to permit defendant to litigate in another action the question of damage from the encroachment, is rendered harmless by the jury's finding in this action that there is no damage.

These conclusions dispose of the case and direct an affirmance. Other points are relied upon and discussed, but they become unimportant, in view of the conclusions reached. The judgment appealed from will be affirmed, and it is so ordered.

WATSON, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.

## On Rehearing.

SADLER, Justice.

Able counsel for appellant has forcefully presented his grounds in support of motion for rehearing both by written brief and oral argument. Two principal points are relied upon, first, that the opinion is erroneous in affirming the trial court's action in holding the plans for the building contained an ambiguity upon the question whether the entire floor or only a small portion thereof surrounding a drain should pitch toward such drain.

This point was considered by us on its merits, and we are not persuaded that the trial court committed error in submitting the true meaning of the plans to the interpretation of the jury. We are quite satisfied it would have been error against appellee, under all the evidence touching the question of ambiguity vel non, for the court to have declined to do so.

The second ground of error urged to exist in the opinion relates to our holding that the general exception interposed raised no objection to the court's charge that the decree in the separate suit against city of Albu-

querque and appellant afforded complete protection to the latter in his possession, use, and enjoyment of the building as erected. Counsel urges that the statement of the grounds of exception to the court's denial of his motion for dismissal or involuntary nonsuit, to wit, that it appeared from the uncontroverted evidence that the building as erected constituted a trespass within the lines of a public street of the city of Albuquerque, was a sufficient statement of his position, and renders available there the grounds of attack now sought to be directed against said decree.

The fault to be found with this argument is that the decree in the separate cause, the effect of which was judicially declared in the instruction in question, recognizes as a trespass the projection of the building into the line of the sidewalk, but adjudicates nevertheless (and with the city's consent) that the trespass (the projection) is without damage to the municipality. The instruction says in effect: Notwithstanding the slight projection here shown constitutes a trespass, the appellant by virtue of said decree is protected in his possession, use, and enjoyment of the building as erected, so long as it shall remain standing. If there were reasons why the decree did not have this effect, a statement of those reasons in the form of objections to the instruction would have disclosed the vice therein. Otherwise, as held in our original opinion, the declared effect of the decree became the law of the case and controlling upon the rights of the parties.

After carefully considering the motion for rehearing and arguments advanced in support thereof, we feel constrained to adhere to our original opinion herein. The motion will therefore be denied and it is so ordered.

WATSON, C. J., and BICKLEY, J., concur.

HUDSPETH and ZINN, JJ., did not participate.