515 P.2d 645

Henry C. DEMERS, Plaintiff-Appellee Cross-Appellant,

v.

Edward J. GERETY, Defendant-Appellant Cross-Appellee.

No. 1098.

Court of Appeals of New Mexico.

Sept. 19, 1973.

Certiorari Granted Oct. 30, 1973.

Bruce D. Hall, Stuart S. Keown, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellant and cross-appellee.

Charles G. Berry, Marchiondo & Berry, Mary C. Walters, Albuquerque, for plaintiff-appellee and cross-appellant.

## OPINION

HENDLEY, Judge.

After consideration of defendant's motion for rehearing, the original opinion is withdrawn and the following opinion is substituted.

From an adverse judgment in a medical malpractice case, entered pursuant to jury verdict, defendant appeals. The appeal raises three issues: (1) whether a verdict should have been directed or judgment n. o. v. entered; (2) whether certain instructions were correct; (3) whether the court erred in permitting a certain hypothetical question to be asked of an expert witness.

We affirm.

At the close of plaintiff's case and at the close of defendant's case, defendant moved for a directed verdict on the grounds of lack of substantial evidence to submit the issues of medical malpractice, lack of con-

sent to perform surgery, and lack of informed consent to the jury. Both motions were denied and the case was submitted to the jury on the following unobjected to instruction:

"The plaintiff claims that he sustained damages and that the proximate cause thereof was one or more of the following claimed acts of malpractice:

"1. The defendant proceeded to perform an operation upon him and in so doing failed to possess and apply the knowledge and use the skill and care which would be used by reasonably well qualified specialists in the same field practicing under similar circumstances.

"2. The defendant proceeded to perform an operation upon the plaintiff without first obtaining a legal consent therefor.

"3. The defendant proceeded to perform an operation upon the plaintiff which was different from any operation authorized by the plaintiff.

"The plaintiff has the burden of proving that he sustained damage and that one or more of the claimed acts was the proximate cause thereof.

"The defendant denies the plaintiff's claims.

"If you find that plaintiff has proved those claims required of him, then your verdict should be for the plaintiff.

"If on the other hand, you find that any one of the claims required to be proved by plaintiff has not been proved, then your verdict should be for the defendant."

The foregoing instruction is in the almost identical form as the instruction requested by defendant. No special interrogatories were requested. The jury returned a general verdict in favor of plaintiff. Subsequently, defendant moved for judgment n. o. v. or in the alternative a new trial, or in the alternative a remittitur. The trial court denied the motion.

■ For the purpose of this opinion we assume that the trial court was in error in

not granting defendant's motion for a directed verdict on the theories of medical malpractice and lack of informed consent. See Reed v. Styron, 69 N.M. 262, 365 P.2d 912 (1961) and its progeny. We are, however, faced with defendant requesting an instruction which submitted the case to the jury on the alternative theory that "one or more of the claimed acts or omissions was the proximate cause thereof." This requested instruction was totally inconsistent with defendant's motion for a directed verdict. Compare Platero v. Jones, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971).

■■ Defendant's argument is that we must review the record as of the time of ruling on the directed verdict. However, this is not the rule in New Mexico. Our Supreme Court in Griego v. Conwell, 54 N.M. 287, 222 P.2d 606 (1950), in a similar case regarding the denial of motions for a directed verdict, stated to the effect that an unobjected to instruction becomes the law of the case on appeal. Implicit in *Griego* is that the court will not go behind the law of the case instruction. Accordingly, we need only determine whether there was evidence to support any of plaintiff's theories. See also Marchant v. McDonald, 37 N.M. 171, 20 P.2d 276 (1933).

■ We have reviewed the record and find that plaintiff's theory of lack of consent to surgery is supported by substantial evidence.

In the following review of the evidence all presumptions and inferences are in favor of the verdict, and all inferences or evidence to the contrary are disregarded. As has frequently been stated it is for the jury and not the appellate court to weigh testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of witnesses and say where the truth lies. Cooper v. Burrows, 83 N.M. 555, 494 P.2d 968 (1972); Durrett v. Petritsis, 82 N.M. 1, 474 P.2d 487 (1970).

In 1963 plaintiff was operated on in Boston for an ileostomy and colectomy. An ileostomy is the creation of an outlet for the small intestine or ileum through the abdominal wall. A colectomy is an excision of all or part of the large bowel or colon. Plaintiff's ileostomy functioned properly after this surgery.

Plaintiff moved to Albuquerque in 1965 and first consulted the defendant, a general surgeon, on October 30, 1967. At that time plaintiff was 40 years of age and had a sixth grade education. Plaintiff's native language was French, and he had some difficulty with English.

Plaintiff consulted the defendant because of a lump located some distance from the ileostomy site. Defendant diagnosed the lump as a hernia. During the examination plaintiff stated that if repair of the hernia in any way involved surgery on the ileostomy that he would return to Boston for the operation. Defendant agreed not to touch the ileostomy.

Plaintiff entered the hospital at approximately 2:00 p. m. on November 12, 1967. On admission plaintiff signed an "Authority to Operate" which described the operation to be performed as "* * * repair of ventral hernia."

Sometime subsequent to admission a second "Authority to Operate" was obtained. This document bears two signatures by plaintiff and describes the operation to be performed as "Repair Ventral Hernia & revision of ileostomy and repair of hydrocele." Plaintiff does not specifically recall signing this authority to operate. He testified that after having been given a sleeping medication, later identified as Nembutal, he was awakened by a nurse. The nurse said that something had been forgotten and had to be completed. The nurse did not turn the lights on and the plaintiff could not see. She held her finger where the plaintiff was to sign, and he did so. There is an inference that what was signed was the second authority to operate. There was medical testimony that Nembutal has a "* * * hypnotic effect in some forms of use, in that there will be the capability of introducing a state of mind that is not fully aware of the situation."

The day after he was admitted plaintiff was taken to surgery. After he was anesthetized defendant proceeded to perform an examination which could not be performed while plaintiff was conscious. The examination consisted of the insertion of defendant's gloved finger into plaintiff's ileostomy in a manner and to an extent not possible while plaintiff was conscious. It was during this examination and prior to the making of any incisions that defendant discovered that plaintiff's hernia protruded from the same opening in the abdominal wall as did the ileostomy. It was at this point that defendant definitely concluded that repair of plaintiff's hernia would necessarily require relocation or revision of his ileostomy. Defendant proceeded to repair the hernia, revise the ileostomy and repair the hydrocele.

Subsequent to surgery plaintiff developed complications which required surgery on two subsequent occasions and a long course of treatment. Among other treatments, plaintiff's ileostomy had to be revised again to a location which is inconvenient.

Defendant's first point on appeal argues that it was error for the trial court to refuse to direct a verdict or grant judgment n. o. v.

■■■ The rule applicable in consideration of a motion for directed verdict is that the trial court must view the evidence in the light most favorable to the party resisting the motion, indulge every reasonable inference in support of the party resisting, ignore conflicts in evidence unfavorable to him and not grant the motion if reasonable minds might differ on the conclusion to be reached on the evidence or permissible inferences. Archuleta v. Johnston, 83 N.M. 380, 492 P.2d 997 (1971). In considering a motion for judgment n. o. v. the rule is that the motion is to be granted only when there is neither evidence nor inference from which the jury could have arrived at its verdict. Archuleta v. Johnston, supra.

In support of his argument the defendant cites the parol evidence rule. Defendant would have us hold that plaintiff is precluded by the parol evidence rule from attempting to show that he did not in fact consent to the revision of his ileostomy by signing the second authority to operate.

Further, defendant cites the case of Grannum v. Berard, 70 Wash.2d 304, 422 P.2d 812 (1967), for the proposition that the law presumes competence in one consenting to an operation and that a patient seeking to avoid the effect of this presumption must present clear and convincing evidence of his lack of capacity to consent.

■■■ We begin our discussion by noting that the physician-patient relationship is a fiduciary one. Moore v. Webb, 345 S. W.2d 239 (Mo.App.1961). See Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962). The physician is required to exercise the utmost good faith toward the patient throughout the relationship. We do not inquire whether the physician has gained an advantage in performing surgery or whether his conduct was fraudulent. We only inquire whether the physician violated his fiduciary duty. If he did, any contractual relationship with the patient is void as against public policy. Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226 (1965).

■■■ In the present case it is not necessary to go so far as to find that defendant knowingly violated his fiduciary duty. The jury was instructed that plaintiff had the burden of establishing his lack of mental competence at the time he signed the second authority to operate by clear and convincing evidence. Proof of lack of capacity is not precluded by the parol evidence rule. Van Meter v. Zumwalt, 35 Idaho 235, 206 P. 507 (1922). The general verdict in plaintiff's favor indicates that he bore that burden. The jury having found that plaintiff was not competent at the time he signed the consent, that consent is ineffectual. As pointed out above the defendant knew before making the first inci-

sion that repair of plaintiff's hernia necessarily would involve revision of the ileostomy. The jury found that there was no valid consent to such a revision. It follows that defendant is liable for all damages proximately caused by the procedures he performed to which plaintiff did not consent. There was medical testimony that all the subsequent medical complications plaintiff suffered were the result of the hernia repair and ileostomy revision. Since the procedure for which a valid consent existed, namely the hernia repair, could not be performed without performing a procedure to which plaintiff had not consented the defendant was in effect without authority to perform either. Having undertaken an unconsented to course of treatment defendant is liable for all damages proximately caused thereby. See Annot. 56 A.L.R.2d 695 (1957). We conclude there was evidence to support the instruction as given.

 Defendant's second point deals with two instructions given by the trial court. The first was the instruction on damages. The relevant portions of that instruction read as follows:

"If you should decide in favor of the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the plaintiff to have resulted from the wrongful conduct of the defendant:

"1. The nature, extent and duration of the injury.

"2. The aggravation of any pre-existing condition, but you may allow damages only for the aggravation itself, and not for the pre-existing condition.

"3. The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury. . . ."

Defendant puts his objection to the first element of the instruction this way: "* * * Under any view, Dr. Gerety did not inflict a separate injury on plaintiff. * * *" Defendant goes on to argue that at most what was caused was an aggravation of an existing condition. In considering defendant's first point on appeal we have concluded that the entire course of surgery performed by defendant was unconsented to and therefore tortious. Under this theory we consider the incisions, sutures and other procedures necessarily involved in the surgery which defendant performed to be injuries inflicted by the defendant. It cannot be argued that these procedures were something from which plaintiff suffered prior to the surgery performed by defendant. On the other hand, the medical testimony makes it clear that the eventual revision of the ileostomy to its present inconvenient location was necessitated by complications which were a result of the unconsented to surgery performed by defendant. This is sufficient justification for the second element of the damage instruction.

 Defendant's objection to the third part of the damage instruction is that plaintiff suffers no present pain from his ileostomy. Defendant also appears to argue that there is no evidence that any possible future pain which plaintiff may suffer will be proximately caused by defendant's tortious conduct. Defendant's argument asks this court to indulge in speculation about the basis on which the jury awarded damages for pain and suffering. The jury was properly instructed to award damages only for pain and suffering *reasonably certain* to be experienced. We will not assume that the jury failed to follow the instructions by not applying the "reasonably certain" standard. In other words, if no pain is reasonably certain to be experienced we assume the jury awarded no damages on that basis.

 Defendant's last objection to instructions pertains to the following instruction:

"The relationship between a doctor and patient is what is known in law as a fiduciary relationship, that is a relation-

ship reposing in faith, confidence and trust and the placing of reliance by one upon the judgment and advice of the other."

Defendant's appellate objection to this instruction is that it is "abstract" in that it is not related to the instruction itself to any of plaintiff's theories of recovery. Defendant overlooks the fact that instructions are read together, and that each need not, within its own limits, contain all elements. Eidson v. Atchison, Topeka and Santa Fe Railway Co., 80 N.M. 183, 453 P.2d 204 (1969); Roybal v. Lewis, 79 N. M. 227, 441 P.2d 756 (1968). When all the instructions given in this case are read together they fairly present the issues and the law applicable thereto. Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 428 P.2d 625 (1967).

The last issue raised by defendant on appeal deals with the correctness of a hypothetical question asked of an expert witness. This issue pertains to plaintiff's theory of medical malpractice. As previously discussed, the general verdict returned in this case will be affirmed if any one of plaintiff's theories is sustained by the evidence. Hopkins v. Orr, 124 U.S. 510, 8 S.Ct. 590, 31 L.Ed. 523 (1888); Berger v. Southern Pacific Co., 144 Cal.App. 2d 1, 300 P.2d 170, 60 A.L.R.2d 1104 (1956); Larriva v. Widmer, 101 Ariz. 1, 415 P.2d 424 (1966). Since plaintiff's theory of lack of consent is supported by the evidence, we do not find it necessary to consider the issue of the hypothetical question which pertains to one of plaintiff's other theories.

Affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

This is a medical malpractice appeal by defendant from a judgment in favor of plaintiff. It involves claimed error for the reasons set out in the majority opinion.

Inasmuch as consent is a matter of first impression in New Mexico, and expert testimony on disclosure needs clarification by this court and the Supreme Court, this concurring opinion is submitted.

## FACTS MOST FAVORABLE TO PLAINTIFF

The following constitute the facts most favorable to plaintiff.

In 1963, plaintiff was operated in Boston for an ileostomy and colectomy. An ileostomy is an operation to create an artificial anus by making an opening from the ileum through the abdominal wall. A colectomy is an excision of all or part of the colon. Following surgery, plaintiff's ileostomy functioned properly.

In 1965, plaintiff and his family moved to Albuquerque.

On October 30, 1967, plaintiff first sought the services of defendant, a general surgeon. Plaintiff was 40 years of age with a sixth-grade education. Because of a Canadian-French background, it was difficult for plaintiff to speak English fluently. His common language was French. He spoke in the English language only when he went to work. It was hard for him to express himself clearly, and conversation could be termed "broken English."

Plaintiff presented himself to defendant on a complaint that he had a lump in the abdominal area and sought medical help. Defendant determined that the lump was a hernia. It was about an inch from the ileostomy. During the examination, plaintiff emphatically told defendant not to touch the ileostomy. If anything had to be done to the ileostomy, he would return to Boston for medical services. The defendant agreed that a hernia operation would "have nothing to do with the ileostomy."

On November 12, 1967, about 2:00 P.M., plaintiff was admitted to the hospital for surgery to be performed by defendant the following day. In the presence of his wife, plaintiff signed an admission document on the rear of the hospital summary sheet called "Authority to Operate." The

proposed operation was described as "repair of ventral hernia." The admission nurse's notes stated as "Reason for admission and remarks: Repair Ventral Hernia." Before being taken to his room, plaintiff was x-rayed and arrived at his room at about 3:30 P.M.

We are now confronted with another written instrument called "Authority to Operate" dated November 12, 1967, prepared by a nurse at the order of defendant and signed twice by·plaintiff. This instrument authorized defendant to operate for "Repair Ventral Hernia and revision of ileostomy and repair of hydrocele." The last phrase "and repair of hydrocele" was in blue ink and inserted by defendant prior to the second signature of plaintiff. The former language was in black ink.

The first "Demers" signature appears on the line drawn for a signature. The nurse who procured the signature had no recollection of what occurred. She was on duty until 3:00 P.M. Plaintiff did not recall seeing this paper or the events surrounding this signature.

At around 9:30 P.M., a nurse gave plaintiff Nembutal to put him to sleep. Late at night, while he was asleep, the nurse awoke him and brought him a sheet of paper to sign. The nurse told him something was forgotten and had to be completed. Plaintiff could not see. The lights were not on. The nurse put her finger where the signature was to be placed and plaintiff shakily signed it. It was signed above his first "Demers" signature. He did not know what this paper was.

Defendant admitted plaintiff expressed concern that his ileostomy be touched; that plaintiff said he would prefer that it not be touched. Defendant did not know whether revision of the ileostomy would be necessary before an examination in the operating room. If he discovered a defect in the hernia and one in the opening through which the ileostomy protruded, he believed it possible to repair the hernia without revising the ileostomy.

Defendant asserted he was present when the second "Demers" signature was obtained but he could not recall advising plaintiff that a revision of the ileostomy might be necessary.

On November 12, 1967, the day of plaintiff's admittance, defendant orally interviewed plaintiff in the hospital sometime between 3:00 P.M. and 11:00 P.M. The history and physical examination was subsequently dictated by defendant and later transcribed. Defendant's "impressions" were (1) ventral hernia and (2) right hydrocele. His "impressions" did not include revision of the ileostomy.

From defendant's oral interview and his written impressions it does not appear that revision of the ileostomy was mentioned to plaintiff, nor that plaintiff consented to revision.

The following day while plaintiff was in the operating room under anesthetic, defendant discovered that revision of the ileostomy was necessary. Defendant repaired the ventral hernia, revised the ileostomy and excised the right hydrocele. An abdominal abscess occurred by reason of the revision which led to further surgery on two occasions thereafter. Plaintiff was never advised that an abscess could or would occur as a result of surgery which caused additional surgery.

A. *Defendant was not entitled to a directed verdict or judgment n. o. v.*

On the subject of directed verdict and judgment n. o. v., it is not necessary to state the applicable rule set forth in Archuleta v. Johnston, 83 N.M. 380, 492 P.2d 997 (Ct.App.1971).

From the complaint forward, plaintiff contended that defendant performed "surgery upon plaintiff in areas for which he had no consent." Defendant claims now there was no substantial evidence to support lack of consent because the claimed written consent rendered plaintiff's consent conclusive; that plaintiff's contradictory

statements made prior to the subsequent written consent were ineffective by reason of the parol evidence rule. We do not agree.

Consent to surgical treatment is a matter of first impression in New Mexico. We are faced only with express written consent, absent exceptions such as emergencies.

On the subject of consent, the rule in New Mexico is stated in U.J.I. 8.3 as follows:

> A doctor *must* obtain a *legal consent* either by or on behalf of his patient before (operating on him) (medically treating him). [Emphasis added]

Obtaining "legal consent" is mandatory. "Legal consent" means consent according to law. It may be oral or written. To avoid liability, "according to law" in medical malpractice, exclusive of exceptions, a physician or surgeon who performs an operation must have the patient's express consent. 70 C.J.S. Physicians and Surgeons § 48(g), p. 967 cited under U.J.I. 8.-3; 61 Am.Jur.2d., Physicians, Surgeons, etc., § 152.

The following book and law review articles, cited in many cases, discuss the law of consent, the cases of importance and the concern of the medical profession. They are cited in recent important cases. Stetler and Moritz, Doctor And Patient And The Law, Ch. 9, p. 133 (1962); Shinkle, Consent To Medical And Surgical Treatment, 13-14 Drake L.Rev. 101 (1965); Plante, An Analysis Of "Informed Consent", 36 Fordham L.Rev. 639 (1968); Meyers, Informed Consent in Medical Malpractice, 55 Calif.L.Rev. 1396 (1967); Powell, Consent to Operative Procedures, 21 Md.L.Rev. 189, at 192, 193 (1961); Smith and Olinger, Consent To Surgery, 11 Clev.-Mar.L.Rev. 241 (1962); Kelly, The Physician, The Patient, And The Consent, 8 Kan.L.Rev. 405 (1959-1960); McCoid, A Reappraisal of Liability For Unauthorized Medical Treatment, 41 Minn.L. Rev. 381 (1957); Waltz and Scheuneman, Informed Consent to Therapy, 64 Nw.U.L. Rev. 628 (1969-1970); Swan, The California Law of Malpractice of Physicians, Surgeons, and Dentists, 33 Calif.L.Rev. 248 (1945); Malpractice—Duty of Doctor To Disclose Risk Involved In Operation, 40 Minn.L.Rev. 876 (1955-1956); Landsverk, Informal Consent As A Theory Of Medical Liability, Wis.L.Rev.1970, at 879; Weyandt, Valid Consent To Medical Treatment: Need The Patient Know, 4 Duquesne U.L.Rev. 450 (1965-1966); McCoid, The Care Required Of Medical Practitioners, 12 Vand.L.Rev. 549 (1958-1959); Karchmer, Informed Consent: A Plaintiff's Medical Malpractice "Wonder Drug", 31 Mo.L.Rev. 29 (1966); 75 Harv. L.Rev. 1445 (1962).

It is not necessary to cite and quote authority at length to establish the rule of consent in New Mexico.

For a historical review and discussion of this subject, see Canterbury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (1972).

"Express consent" was defined in Pacific Nat. Agricultural Credit Corporation v. Hagerman, 40 N.M. 116, 121, 55 P.2d 667, 670 (1936):

> What is express consent? It so obviously carries its own meaning that it is even difficult to define. It is positive, direct, unequivocal consent. Perhaps it can best be defined by stating its antithesis. "Express consent" is that consent which does not require the aid of inference or implication to supply its meaning.

(1) *Physician-Patient Relationship Is Fiduciary.*

A fiduciary relationship exists between a physician and patient, a relationship of trust and confidence. Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962); Hammonds v. Aetna Casualty & Surety Company, 237 F.Supp. 96 (N.D.Ohio 1965); Cole v. Wolfskill, 49 Cal.App. 52, 192 P. 549 (1920); Hunter v. Brown, 4 Wash.App. 899, 484 P.2d 1162 (1971), aff'd. 81 Wash. 2d 465, 502 P.2d 1194 (1972); Moore v. Webb, 345 S.W.2d 239 (Mo.App.1961).

The physician is required to exercise the utmost good faith toward the patient throughout the existence of the relationship. We do not inquire whether the physician has gained an advantage in performing surgery, or whether his conduct was fraudulent. We only inquire whether the physician violated his fiduciary duty. If he did, any contractual relationship with the patient is void as against public policy. Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226 (1965).

For this reason, Morstad v. Atchison, T. & S. F. Ry. Co., 23 N.M. 663, 170 P. 886 (1918) is not applicable. It involves the duty of a person to read a contract before he signs the same. Neither do we accept the doctrine stated in Drummond v. Hodges, 417 S.W.2d 740 (Tex.Civ.App. 1967) that a patient who signs a written authorization for the operation must show fraud, accident, mistake, undue influence or mental incapacity to avoid the consent. We do not approve the doctrine set forth in Grannum v. Berard, 70 Wash.2d 304, 422 P.2d 812, 25 A.L.R.3d 1434 (1967). In that case, plaintiff claimed incapacity to consent while under the influence of drugs. The court held that plaintiff failed to overcome by clear, cogent, and convincing evidence, the presumption that he comprehended the nature, terms, and effect of the consent for the surgical operation.

The above are cases relied on by defendant. In New Mexico, medical malpractice is an action in tort, not contract. Schrib v. Seidenberg, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969). The general law of contracts is not applicable. Moore v. Webb, supra.

A review of case law and the various articles on the subject proves unequivocally that the set of concepts surrounding the doctrine of consent are uncertain, slippery and complex. To avoid this problem in New Mexico, we resolve that express written consent is governed by a fiduciary relationship. Modern medicine demands that the patient place unquestionable faith in the doctor because the average patient is ignorant of medical science.

(2) *Express Written Consent Must Be Direct, Positive and Unequivocal.*

*First,* plaintiff stated to defendant an express prohibition on an ileostomy operation in clear, distinct, precise words:

That's the exact words, and I kept repeating, "Do not touch that thing. Nobody won't touch that * * *

\* \* \* \* \* \*

It's going to go to Boston if somebody is going to touch that."

The express prohibition forbade defendant to go beyond the limits of this prohibition.

The first written consent to operate, signed by the plaintiff in the hospital, granted defendant authority only to repair the ventral hernia. This consent was never questioned. This consent forbade defendant to revise the ileostomy.

The philosophy behind this rule, often quoted, was first expressed by Justice Cardozo, in Schloendorff v. New York Hospital, 211 N.Y. 125, 129, 105 N.E. 92, 93 (1914):

Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages.

Defendant now seeks to overcome express oral prohibition and limited written consent. Before touching the ileostomy, defendant had a duty to explain to plaintiff in understandable non-technical words that repair of the hernia would or could necessitate the revision of the ileostomy; that all circumstances considered, defendant's choice of plausible courses during surgery should not be called into question by plaintiff. This duty demanded a full and frank disclosure to plaintiff of all pertinent facts relative to repair of the hernia due to its proximity to the ileostomy, in-

cluding the probability of an abscess which could lead to subsequent operations. Woods v. Brumlop, supra. Thereafter, defendant had a duty to inquire of plaintiff whether he would forsake the oral prohibition and agree to an amended written consent. "Increased communication may well result in decreased litigation." 75 Harv.L. Rev. 1445, 1449 (1962).

*Second,* in this case, to void the oral prohibition and to amend the limited written consent, defendant had a duty to obtain an express written consent, positive, direct and unequivocal which authorized defendant to operate in accordance with the educated consent of the plaintiff. Plaintiff must know and understand that to which he is consenting. In a fiduciary relationship, the burden is on the defendant to show scrupulous good faith in obtaining an express written authority to operate or to extend the operation when it conflicts with the unequivocal beliefs of the patient. "The law will not allow a physician ˙ɔ substitute his own judgment, no matter how well founded, for that of his patient." Collins v. Itoh, 503 P.2d 36, 40 (Mont. 1972).

*Shinkle,* supra, p. 101, wrote:

With the needle and the knife replacing in large measure the "kind words, cold water, and bed rest" therapy of the old country doctor, and with the patient who presented himself into the doctor's hand with unquestioning faith replaced by the magazine-diagnosed and legally wise patient, the doctor has been advised and often commanded by the hospital, his own lawyer, the hospital's lawyer, and medical magazines written with a legal slant, to get written highly specific consent to a major per cent of the procedures he expects to do. This ever widening web of paper slips has often caused both doctor and patient to assign consent to therapy a much greater importance than courts have ever held it to have.

To avoid litigation in medical malpractice cases, this court must rise to the foresight of the medico-legal prophets above.

*Stetler and Moritz,* supra, p. 148, says:

The prudent physician will insist upon a consent in writing that is sufficiently inclusive in both specific and general authority to permit him to follow good medical practices in all eventualities. Physician and patient should have a clear understanding regarding a possible extension of the operation, not only in the event of an emergency but also where it is otherwise medically advisable.

If there was no clear understanding in this case, defendant had the right to refuse surgery. Childs v. Weis, 440 S.W.2d 104 (Tex.Civ.App.1969); Hammonds v. Aetna Casualty & Surety Company, supra.

Whether plaintiff consented to revision of the ileostomy and whether revision was the proximate cause of plaintiff's injuries for which he was awarded damages were issues of fact for the jury. Defendant was not entitled to a directed verdict or judgment N.O.V.

(3) *An Educated Consent Was Not Granted Defendant For Failure To Disclose.*

Before operating, defendant failed to disclose to plaintiff that as a result of surgery, an abscess might form which would cause an obstruction of his bowels and lead to further surgery. Plaintiff was asked whether he would consent to surgery without this disclosure but the trial court in my opinion erroneously sustained an objection because plaintiff had already testified there was no consent. I interpret this to mean that, with disclosure, plaintiff would not have consented to the operation. Under this theory, plaintiff did not give defendant an educated consent regardless of the alleged express consent.

The rule in Woods v. Brumlop, supra, must be restated. It has been cited, discussed and interpreted in various ways in law review articles, annotations and succeeding cases in other jurisdictions. See *Plante, Karchmer, Meyers, Waltz and Scheuneman,* and *Weyandt,* supra. It was widely discussed in the trial of this case.

The problem arises due to the loose language used after granting a new trial.

*Woods,* 71 N.M. at 226, 229, 377 P.2d at 524, 525, states:

. . . [P]laintiff, at the trial and now, relies entirely upon her contention and allegation that the breach of duty was the failure of defendant to tell plaintiff the truth in answer to a direct inquiry as to the dangers that might result from such treatment, and upon plaintiff's reliance upon defendant's alleged statement that no harm could result to her from such treatment.

\* \* \* \* \* \*

Under the circumstances of this case, a fact issue was presented for determination by the jury upon which there was no necessity for expert medical testimony.

*Plante,* supra, note 90, at 666, says:

Thus, Woods was a fraud or deceit case and it is believed no one has ever claimed that expert testimony is necessary to establish a physician's obligation not to deceive the patient.

However, *Woods* believed it was necessary to discuss the extent of disclosure to determine whether an educated consent had been given. In discussing this issue the court said, 71 N.M. at 227, 377 P.2d at 524, that under a fiduciary relationship, " \* \* \* the physician has the duty to make a *full* and frank *disclosure* to the patient *of all pertinent facts.* \* \* \*" [Emphasis added]

The court then said (at 227, 229, 377 P. 2d at 524, 525):

Plaintiff testified that she would not have consented to the treatments if she had been made aware of the probable dangers resulting therefrom. The real basis for the rule requiring disclosure is to give the patient a basis upon which to exercise judgment as to whether he will consent to the treatment.

\* \* \* \* \* \*

A physician who misleads a patient *by* \* \* \* *failing to give a warning of reasonable and recognized risks inherent in a treatment after which the patient would have refused the treatment,* \* \* \* is liable for the harmful consequences of the treatment. *Such a failure to disclose,* \* \* \* *constitutes malpractice;* and a doctor *who fails to so advise his client,* \* \* \* *is liable for malpractice.* \* \* \* Under the circumstances of this case, a fact issue was presented for determination by the jury *upon which there was no necessity for expert medical testimony.* [Emphasis added]

No authority was cited for the above ruling. The failure of a physician to inform and advise a patient of reasonable and recognized risks inherent in treatment after which the patient would have refused the treatment is liable for malpractice. It is not necessary for the patient to offer medical testimony to show what disclosures a reasonable medical practitioner, under the same or similar circumstances, would have made in the community.

Crouch v. Most, 78 N.M. 406, 410, 432 P.2d 250, 254 (1967) interpreted *Woods* to mean:

In that case, *the doctor failed to inform and advise plaintiff of the dangers inherent in electroshock treatments,* and falsely advised the patient that no danger could result from the treatment. [Emphasis added]

The *Woods* opinion, 71 N.M. at 229, 377 P.2d at 525, said:

Under the circumstances of *this* case . . . there was no necessity for expert medical testimony. [Emphasis added]

Did this include the failure to advise? It was so considered.

Woods v. Brumlop, at 228, 377 P.2d 520, cites as authority on duty to disclose, the case of Mitchell v. Robinson (Mo.1960), 334 S.W.2d 11, 79 A.L.R.2d 1017. *Mitchell* also pointed out that expert testimony was not required. *Mitchell* was subsequently disapproved in Aiken v. Clary, 396 S.W.2d

668 (Mo.1965) which cited Woods v. Brumlop.

*Karchmer,* supra, at 55, wrote:

In conclusion, after *Aiken.* it would appear that the only remaining case not requiring medical testimony in this area of the law is Wood [sic] v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962), which relied on *Mitchell* for authority. With *Mitchell* overruled by *Aiken, Woods* is left not only alone, but unsupported, and is now contrary to the majority of the legal writers and to the decided cases of all of the state, English and Canadian Courts.

*Plante,* supra, reviews *Aiken.* In a note on page 665, *Plante* said the Missouri Supreme Court did not understand Woods v. Brumlop.

I cannot tell by reading Witzke v. Dettweiler, 83 N.M. 802, 498 P.2d 689 (Ct. App.1972) whether the general rule which applies in the examining, diagnosing and treating a patient, would reach failure to disclose.

In Annot. 99 A.L.R.2d 599, at 610, Woods v. Brumlop is interpreted as meaning " * * * that a fact issue had been presented for determination by the jury as to failure to disclose * * * and that in this connection there was no necessity for expert medical testimony."

This conclusion is reached in Hunter v. Brown, 4 Wash.App. 899, 484 P.2d 1162, at 1166 (1971). The strength of this position is based upon the fiduciary relationship quoted from Berkey v. Anderson, 1 Cal. App.3d 790, 805, 82 Cal.Rptr. 67, 78 (1969). "* * * [A] physician's duty to disclose is not governed by the standard practice of the physicians' community, but is a duty imposed by law which governs his conduct in the same manner as others in a similar fiduciary relationship * * *."

Canterbury v. Spence, supra, 464 F.2d at 780; 61 Am.Jur.2d, Physicians, Surgeons, etc., § 154, support *Woods* in this area.

Cobbs v. Grant, 8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1, 9 (1972), states that

*Woods* and *Canterbury* are exceptions to the universal rule that the community standard rule is the applicable test in disclosure. But it adopted the following rule (104 Cal.Rptr. p. 514, 502 P.2d p. 10):

Therefore, we hold, as an integral part of the physician's overall obligation to the patient there is a duty of *reasonable disclosure* of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each. [Emphasis added]

This rule is a modification of *Woods* and *Canterbury* which requires a *"full* and frank *disclosure* to the patient of all pertinent facts * * *." [Emphasis added]

Further citations and comments are not necessary. Woods v. Brumlop stands on the following rule:

In treating, operating upon or making a diagnosis of a patient, a physician has a duty to make a full and frank disclosure to the patient of all pertinent facts relative to the illness, treatment, surgery or therapy prescribed or recommended therefor. If the physician fails to so advise or inform the patient, after which the patient would have refused the treatment, surgery or therapy performed, the physician has committed an act of malpractice and is liable for all harmful consequences which follow as a proximate cause of the failure to disclose. Because a fiduciary relationship exists between physician and patient, expert medical testimony is not necessary to show what a reasonable medical practitioner would have disclosed under the same or similar circumstances in the community.

Based upon this rule, defendant was not entitled to a directed verdict.

B. *Instructions Given Were Not Erroneous.*

Defendant contends two instructions were erroneous: (1) on damages and (2) on fiduciary relationship.

## (a) *Damages*.

The court included in U.J.I. 14.2, Section 14.3: "The nature, extent and duration of the injury." Defendant now contends that U.J.I. 14.3 was *not* applicable under the circumstances of this case. We disagree.

Post-operatively plaintiff developed an acute bowel obstruction. On November 26, 1967, fourteen days after the first operation, defendant's partner examined plaintiff and found him acutely ill and x-rays confirmed a small bowel obstruction. Re-operation was necessary. Exploratory surgery that day disclosed an abscess lying to the side of the ileostomy. Swelling associated with the abscess had closed off the bowel. Defendant's partner removed the portion of the ileostomy involved with the abscess and again brought the ileostomy out at a new site. Drains were placed in the abscess cavity.

Plaintiff was discharged from the hospital on December 8, 1967, and changed doctors. On January 15, 1968, examination disclosed a medical problem in the abscess cavity. On April 30, 1968, signs of peritonitis caused emergency surgery. This infection was set in motion by the abscess discovered during exploratory surgery on November 26, 1967.

Revision of the ileostomy, the abscess and its concomitant results constituted an injury. Clark v. Cassetty, 71 N.M. 89, 376 P.2d 37 (1962). "The nature, extent and duration of the injury" was a question of fact for the jury.

## (b) *Fiduciary Relationship*.

The court instructed the jury:

> The relationship between a doctor and patient is what is known in law as a fiduciary relationship, that is a relationship reposing in faith, confidence and trust and the placing of reliance by one upon the judgment and advice of the other.

Defendant objected to this instruction because there was no evidence there was a breach of a fiduciary relationship. As heretofore stated, defendant breached the fiduciary relationship when he revised the ileostomy without the consent of the plaintiff and failed to make a full disclosure. The instruction paraphrases language in Woods v. Brumlop, supra, and correctly stated the law.

## (c) *The Hypothetical Question Was Not Erroneous*.

The hypothetical question asked the doctor was:

> Q. If a patient came to you and the ileostomy protruded three inches and advised you that he had no pain, that the ileostomy was functioning properly, and that he did not desire any surgical interference with that ileostomy, would you recommend that he undergo such surgery?

Defendant objected to the question because it omitted the undisputed fact that the plaintiff consulted the defendant relative to hernia and repair of the hernia, a fact omitted from the question; that the question, therefore, was based on facts neither in evidence, nor can ever be in evidence; that it was prejudicial because it left the erroneous impression with the jury that the defendant had performed an unnecessary operation on the plaintiff.

I do not agree. The doctor who answered the question performed the third surgical operation. He, the trial court and the jury were familiar with the hernia involvement. Apart from the hernia, one of the important questions in this case was whether defendant had the right to revise the ileostomy if the plaintiff forbade it. The assumed facts in the hypothetical question were ". . . within the range of the evidence already offered . . . ." It was then the duty of

". . . the jury, to determine from all of the evidence whether or not the facts assumed have been proved." U.J.I. 2.1, Hypothetical Question. See State v. Klasner, 19 N.M. 474, 479, 489, 145 P. 679, Am.Ann.Cas.1917D, 824 (1914).

Furthermore, the question could not leave an erroneous impression with the jury that defendant had performed an unnecessary operation because the question referred to a medical "recommendation" by the doctor, not an "unnecessary operation."

We approve the rule that the form and content of a hypothetical question rests in the discretion of the trial court if the trial court believes the question and answer will aid the jury. Where there are disputed factual issues, plaintiff is entitled to select the evidence on the facts favorable to his case. The resolution of the factual dispute is left to the jury. Canney v. Travelers Insurance Co., 110 N.H. 304, 266 A.2d 831 (1970). If the hypothetical question is not based on facts in evidence, but it is allowed by the court, it would be a clear abuse of discretion. Araujo v. Technical Casting Co., 100 R.I. 90, 211 A.2d 645 (1965).

I know of no rule which demands that the question include all of the facts which might be relevant to the opinion requested. The plaintiff may seek the witness' opinion on any combination of facts within the tendency of the evidence. The sufficiency of the data as well as the soundness of the opinion can properly be tested on cross-examination. Marsigli Estate v. Granite City Auto Sales, 124 Vt. 95, 197 A.2d 799 (1964).

In the present case, the defendant did not seek cross-examination of the doctor who answered the hypothetical question.

The hypothetical question was proper, and the trial court did not abuse his discretion.