[No. 3247. Oct. 27, 1928. Rehearing Denied Jan. 4, 1929.]

ORTEGA v. ORTEGA.

[273 Pac. 925.]

Downer & Keleher, of Albuquerque, for appellant.

Joseph Gill, of Albuquerque, and C. J. Roberts, of Santa Fe, for appellee.

## OPINION OF THE COURT

WATSON, J. Tomas Ortega, plaintiff below, sued the First National Bank of Albuquerque, claiming that a certain deposit standing in the name of Pablita P. Ortega, his wife, was community property, and that he had, in law, the right to control it. Pablita P. Ortega intervened, claiming the deposit as her separate property, the proceeds of sheep set apart to her by order of a court of record in Arizona, in a divorce suit there pending, pursuant to a stipulation between the parties. As between husband and wife, the issues were resolved in favor of the latter, and the former has not appealed.

The issues here involved are raised by an intervention by Ana Maria Ortega, mother of Tomas Ortega, the plaintiff. Her claim was based on a contract with her son, made in 1917, under which her counsel contended that the title to the sheep remained in her. Construing that contract, the trial court overruled the contention. He held, however, on the theory of a trial amendment allowed, that, while the contract in terms passed legal title to Tomas Ortega, it was procured from Ana Maria Ortega by such fraud that a court of equity should impress upon the legal title a constructive trust. On this theory the deposit was decreed to Ana Maria Ortega. Pablita P. Ortega has appealed.

Appellant vigorously challenges the correctness of the conclusion above stated. We need not consider that proposition, since another question precedes it and is decisive.

In bar of appellee's cause of action in intervention, appellant pleaded, and introduced in evidence, the proceed-

ings in a court of record in Arizona in which appellee was plaintiff and appellant and her husband, Tomas Ortega, the plaintiff here, were defendants. The court found, and no one here questions, that the cause of action set up in Arizona is the same as that here alleged in intervention. The Arizona suit, commenced March 16, 1926, was terminated March 31, 1926, the day following the institution of the present suit, by an order "that said action be, and it is, dismissed with prejudice."

. Neither the trial court nor counsel for appellee questioned that the dismissal with prejudice was a final judgment of a court of record entitled to "full faith and credit" in the courts of this state. The defense was disallowed on the theory that the judgment was procured through fraud practiced upon appellee. The fraud relied upon is in procuring from appellee a written retraxit, the filing of which resulted in the dismissal. It was procured by Tomas Ortega, Jr., son of appellant, and Tomas Ortega, the plaintiff, and grandson of appellee. Its language is as follows:

### "MOTION TO DISMISS SUIT

"Comes now the above named plaintiff in her own person and respectfully moves this Honorable Court to make and enter an order dismissing the above entitled cause with prejudice, and she hereby authorized her attorney in fact, Tomas Ortega, Jr. to employ an attorney to present this motion in open court, said attorney to be any member of the Bar of the State of Arizona, with the exception of Attorney Isaac Barth, or any other attorney who has appeared in this action either for the plaintiff or for the defendant.

"Dated this 19th day of March, 1926, at Phœnix, Maricopa County, Arizona."

At the same time, appellee executed a revocation of the power of attorney under which Mr. Barth, mentioned in the retraxit, had instituted the suit, and gave power of attorney to Tomas Ortega, Jr., to exercise the authority theretofore enjoyed by Barth.

It would unduly lengthen the opinion to set forth the evidence, the findings, and the refusals to find, bearing upon this question. No single fact of importance is in dispute. The question is whether the facts and circumstances warrant the general conclusion of fraud. Tomas

Ortega, Jr., and appellee were the only witnesses testifying to the whole of the transaction. The latter did not contradict a single fact asserted by the former, and she expressly admitted a number of the more important. She merely denied any recollection that it was explained to her that she was dismissing a pending suit. On the other hand, her grandson testified that it was explained to her, not only that she was dismissing the suit, but that she was taking final action and could not renew her claim, and that it was her own suggestion, after an explanation of the situation existing, that she have nothing to do with appellant or the sheep turned over to her, but that she content herself with what could be realized from the remaining sheep.

Aside from appellee's failure of recollection there is no evidence of any false representation or of any concealment. There was no confidential or fiduciary relation. There is no evidence of persuasion or of influence. Appellee's daughter and her son-in-law were present at all times and advised her. The son-in-law, as appellee herself says, was a good business man. She admits that she asked him to represent her. The original papers were drafted, at appellee's request, and brought to her by her grandson. On learning who had drafted them, she expressed a preference for a Spanish speaking lawyer, an old family friend. The son-in-law summoned him, and he came and fully interpreted and explained the documents. The motion to dismiss he drafted himself. His testimony as to communications was excluded on the ground of privilege.

There is nothing then that will support the conclusion of fraud unless it be "suspicious circumstances and inherent improbabilities." Martinez v. Floersheim Merc. Co., 27 N. M. 245, 199 P. 905. No inherent improbabilities are pointed to. What are the suspicious circumstances? Appellee was 74 years of age and illiterate. That of course did not disqualify her from doing business when properly advised. Two circumstances evidently most impressed the trial court, judging from the opinion dictated at the conclusion of the evidence. They were

that the motion to dismiss was presented to the Arizona court by Tomas Ortega, Jr., a layman, and that the latter was acting in the interest of his mother, who principally benefited by the dismissal.

The court record introduced does not show that any attorney at law appeared upon the motion to dismiss. Tomas Ortega, Jr., testified that, under employment by him, Mr. Don Adell, a Holbrook attorney, submitted the motion to the court. Whether the court overlooked or disbelieved this evidence, or considered it immaterial, we do not know. But, even if Tomas Ortega, Jr., filed this retraxit, and brought it to the attention of the trial court, we see nothing in the act to cast suspicion upon the previous transaction. It was appellee's own motion, not her grandson's. Whether he filed it or procured an attorney to do so does not, in our judgment, aid in determining whether appellee was overreached.

Appellant freely admitted that her son, Tomas, Jr., had espoused her cause throughout her marital trouble, and had been her trusted adviser and agent. It is true that the dismissal of the suit was a benefit to appellant. It is not at all certain from the evidence that the visit of Tomas Ortega, Jr., to appellee was made in the interest of his mother. The remaining sheep were in his possession. He considered that he had a lien on them for services. He understood that Barth had power of attorney to sell them. It was regarding these sheep, as he testifies, that he desired an understanding with his grandmother; not regarding the sheep which his mother had already received, sold, and shipped out of the state. Be that as it may, there appears to have been no misrepresentation or concealment as to appellant's interest or the benefit which would result to her from the dismissal of the suit.

We find no testimony in this case pointing to fraud. The trial court's conclusion is contrary to all the testimony adduced on the point. We find no inherent improbability in that testimony nor any suspicious circumstances which seem to warrant rejecting it as untrue. So we must hold the conclusion of fraud (finding XVII given at appellee's request) erroneous.

The judgment will be reversed, and the cause remanded, with direction to the district court, upon the remaining findings, to enter judgment for appellant. It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.

ON MOTION FOR REHEARING

WATSON, J. The motion is based upon that part of the opinion in which, after reversing the judgment, we remand the cause with direction to the district court to enter judgment for appellant. It is urged that this be modified by directing the district court to grant a new trial.

The proposition is that the issue of fraud in the obtaining of the retraxit was introduced by a trial amendment, by which appellee was surprised, and that she did not have sufficient opportunity to produce evidence upon this point. It is sought to be shown by affidavits that the daughter and son-in-law of appellee, mentioned in the opinion, could not be produced at the trial, despite efforts made to that end; that, if they had been produced, they would have given evidence material to appellee's contention of fraud; and that such evidence, not formerly produced, would be available upon another trial.

We do not think that we may properly consider these affidavits. By statute our disposition of a cause is to depend upon the facts contained in the record alone. App. Proc. Rule 17, § 1. Moreover, the motion, with the accompanying affidavits, amounts to an application for a new trial on the ground of newly discovered evidence. Under the procedure in this state, the matter of granting new trials for newly discovered evidence rests within the discretion of the trial court. Our province is to review its action for error.

Both parties point to State ex rel. Bujac v. District Court, 28 N. M. 28, 205 P. 716, as the controlling authority. After careful consideration and an extensive review of authorities, it was there laid down, as a fundamental principle always to be applied, that "the appellate court, * * * should, upon reversal, either render the proper judgment or direct the lower court to do so, except in those

cases where such action is prevented by the circumstances, or where legal injustice would thereby result to one of the parties." There are no circumstances here, such as the necessity for a new verdict, preventing the rendition of judgment. The question is whether rendering judgment, or directing it to be done, results in a "legal injustice" to appellee. This, as we think, must be determined from the record before us.

Before proceeding to consider this question, we call attention to action which might be taken, favorable to appellee, short of directing a new trial. Frequently, on reversal of a judgment, this court has ordered the cause to be remanded, with a direction that the lower court proceed in a manner not inconsistent with the opinion. The Bujac Case, supra, is an example. As there pointed out, in such a case the court, after correction of the error, is to proceed from that point, and possesses all the power that he did possess at the same point in the original trial, including the right to entertain a motion for a new trial for newly discovered evidence. If such disposition had been made of the present appeal, it would have been the duty of the trial court, upon receiving the mandate, to vacate the conclusion of fraud and to enter judgment for appellant. Thereupon, under the authority of the Bujac Case, appellee might have made to the trial court such application for a new trial as is here presented. We are convinced that this is the most appellee could properly ask from this court, and we shall consider the proposition as though the motion were for such modification.

There are considerations on both sides of this question. Such a practice would give a party whose judgment had been reversed a chance to overcome his error in submitting his case on insufficient evidence. That would tend to promote ideal justice. Opposed to this is the great desirability of reaching an end of litigation, the presumption that all available evidence has been produced, and the additional expense to appellant of another trial. On the other hand, it is not to be overlooked that a new trial is always an evil, but is frequently unavoidable, and that the trial court, in its discretion, will not grant a new trial except to promote the ends of justice.

Under our system of appellate procedure, it is usually only those errors committed against the losing party which are considered. Obviously errors may be, and often are, committed against the prevailing party. Of those errors he has no reason to complain so long as the judgment is wholly favorable to him. When that judgment has been reversed, why should he not have the same opportunity to complain that he would have had if he had lost?

In recognition of this imperfection in our system, we recently adopted App. Proc. Rule 15, § 2, as follows:

> "In causes tried without a jury, the appellee or defendant in error may point out in his brief any errors the court may have committed against him, and this court will consider whether notwithstanding error against appellant or plaintiff in error, the judgment should be affirmed; or, because of the errors committed against appellee or defendant in error, he may be entitled to a new trial."

That rule would seem to require of the prevailing party that he preserve and present to this court error against him if he wishes to contend that its effect is to save an erroneous judgment in his favor or to entitle him to a new trial if his judgment is reversed. That course was not pursued in this case; the trial having occurred before adoption of the rule. It seems to point out a means of presenting to this court a "legal injustice" which, as said in the Bujac Case, would make it proper to remand for new trial.

In our search for "legal injustice" we should, as we think, look to the record to determine whether, if a motion for a new trial were applied for by appellee in the trial court after the correction of the error and the entry of an adverse judgment, he could succeed. If precluded by the record, then it would be not only improper, but futile, to sustain the present motion.

The record shows the following facts: Just before proceeding to trial, and on the same day, appellant offered a supplemental answer to appellee's petition in intervention. By that supplemental answer, as new matter, she set up the Arizona judgment as res adjudicata. One of appellee's counsel objected to the answer on the ground of surprise. After a number of statements by counsel, the

objection was overruled and no exception was taken. Another of appellee's counsel then stated that they would deny the allegations of the supplemental answer on information and belief. Thereupon the trial proceeded. The issue of fraud in obtaining the retraxit, the immediate issue upon which the appeal has turned, was not introduced into the case until three days later, when appellee filed a reply to the supplemental answer setting up the fraud. There was no claim at the time that appellee was not prepared fully to prove her contentions, or that any witnesses were lacking, nor any request for time within which to produce necessary witnesses to prove the contention.

This being the record, we cannot see how appellee could prevail if given the opportunity to present a motion for a new trial on the ground of newly discovered evidence. The entire lack of diligence would prove fatal.

That being the situation, we are of opinion that appellee has no ground for relief, and that her motion must be overruled. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.