595 P.2d 387

**Henry G. DEMERS, Plaintiff-Appellant,**

v.

**Edward J. GERETY, M. D.,
Defendant-Appellee.**

No. 2724.

Court of Appeals of New Mexico.

Feb. 7, 1978.

Charles G. Berry, Marchiondo & Berry, P. A., Albuquerque, for plaintiff-appellant.

Bruce D. Hall, Wm. Robert Lasater, Jr., Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

"Ancaeus . . . was told by a hard-pressed slave that he would never live to taste the wine of his vineyards, and when such wine was set before him he sent for the slave to laugh at the latter's prognostications; but the slave made the answer 'there's many a slip 'twixt the CUP and the lip'. At this instant Ancaeus was told that the Calydonian BOAR was devastating his vineyard, whereupon he set down his cup, went out against the boar, and was slain in the encounter." Brewer's Dictionary of Phrase & Fable, Centenary Edition (1970), Harper & Rowe, p. 33.

Litigation is a slippery experience when appeals are reversed. Everything is uncertain until the case is put to rest.

Plaintiff was denied the right to taste the wine of his vineyard. He was slain in the instant case in his encounter with two district judges.

This is a career case. See *Demers v. Gerety*, 85 N.M. 641, 515 P.2d 645 (1973); Id., 86 N.M. 141, 520 P.2d 869 (1974), Id., 87 N.M. 52, 529 P.2d 278 (Ct.App.1974). In the first trial, plaintiff was awarded $67,000.00 in damages. In the second trial, he was awarded nothing. Plaintiff appeals. We reverse.

A. *The original trial judge erroneously recused himself.*

The Honorable Gerald D. Fowlie, District Judge, presided at the first trial. After reversal by this Court, the mandate for a new trial was filed in the district court clerk's office on December 6, 1974. On the same day, Judge Fowlie formally filed a recusal that stated:

I hereby recuse myself from hearing any proceedings in the above cause.

Judge Fowlie mailed a copy of his recusal to attorneys of record. The recusal showed that this case was reassigned to Judge Harry E. Stowers, Jr. Eighteen months later, on June 14, 1976, Judge Stowers also filed a formal recusal. Judge Stower's recusal, however, did not show that the case was reassigned to Judge Maurice Sanchez. Neither does the record show that this cause was reassigned from Judge Stowers to Judge Sanchez in accordance with the rules adopted by the Judges of the Second Judicial District. The district court's record shows that on some unrecorded date: "A44262 not honored by Judge Sanchez unless all counsel stipulate and agree to the disqualification."

After learning that Judge Sanchez would preside in this case on the merits, plaintiff filed an affidavit of disqualification and defendant filed a motion to quash. A hearing on defendant's motion was held on July 15, 1976. That same day, plaintiff filed a motion that Judge Fowlie withdraw his recusal and six days later, Judge Fowlie, without a hearing, and remaining mute, summarily denied the motion.

In the absence of any explanation, this Court cannot look with approval upon the conduct of plaintiff's attorney which allowed a delay of 19 months. Nevertheless, plaintiff did not waive the right to challenge the recusal by Judge Fowlie.

Recusal is governed by § 16–11–3(C)(1)(a), N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.) of the Code of Judicial Conduct. It reads as follows:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including *but not limited to instances where*:

(a) he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding;

 Recusal rests within the discretion of the trial judge. If a district judge seeks a recusal, the judge need not state the reasons why personal bias and prejudice exists. He/she may have personal reasons. But these reasons must be valid. *Doe v. State*, 91 N.M. 51, 570 P.2d 589 (1977). Furthermore, when the recusal is challenged, and the challenge is denied, a district judge has a duty to state in the order of denial that he has valid reasons for recusing himself. To remain mute constitutes an abuse of discretion; to refuse to hear the case without a compelling reason constitutes a neglect of duty.

 In the trial of cases, recusal and disqualification of district judges is a subject of vital importance in the administration of justice. If they are not disqualified, they have a duty to sit. To introduce this subject matter, we borrow the words quoted in the landmark case of *Benedict v. Seiberling*, 17 F.2d 831, 840 (D.C.Ohio, 1926):

"Quite true it is that the judge has no concern in presiding on the trial of any particular case, and no litigant has any right to have a particular judge try his case; but every litigant under the Constitution and laws has the right to insist that his case be tried by the regular judge, if he is holding the court, unless he is shown to be disqualified, and it is essential to the orderly administration of justice and the integrity of the Constitution that judges appointed under it to administer its judicial power shall not be wrongfully driven from the judgment seats in any case. * * * "

 It has been held that a district judge has the inherent power at any time to acknowledge his own disqualification and certify that fact of record, *State ex rel. Mizner Land Corporation v. Gray*, 117 Fla. 294, 157 So. 663 (1934). In addition, a judge has ". . . the discretionary power to disqualify himself *sua sponte* whenever the existence of any semblance of judicial bias or impropriety in a proceeding in his court comes to his attention." *Stein v. State*, Ind.App., 334 N.E.2d 698, 699 (1975). But the grounds relied on by the judge for disqualification must be adequate, because a judge has no right to disqualify himself in the absence of a valid reason. *Williams & Mauseth Ins. Brokers, Inc. v. Chapple*, 11 Wash.App. 623, 524 P.2d 431, 434 (1974); *Arizona Conference Corp. v. Barry*, 72 Ariz. 74, 231 P.2d 426 (1951); *Clawans v. Waugh*, 10 N.J.Super. 605, 77 A.2d 519 (1950); *Board of County Com'rs of Pitkin v. Blanning*, 29 Colo.App. 61, 479 P.2d 404, 406 (1970), or for the most compelling reasons. *Nelson v. Fitzgerald*, 403 P.2d 677 (Alaska, 1965). "There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *In Re Union Leader Corporation*, 292 F.2d 381, 391 (1st Cir. 1961).

We should heed the admonition of Justice Montoya as stated in his special concurring opinion in *Gray v. Sanchez, Robertson v. Sanchez*, 86 N.M. 146, 150, 520 P.2d 1091, 1095 (1974).

If the present system of disposing of cases in the Second Judicial District inhibits or in any way interferes with the substantive right of the litigant to disqualify a judge, as set forth in the statute, then the latter right must prevail. Otherwise, the statutory right is more illusory than real.

 Given this duty to hear a case, and absent compelling reasons to recuse himself such as bias or prejudice, reversal and remand for a new trial are not sufficient to prevent a judge from retrying a case. *State v. Nelson*, 65 N.M. 403, 413, 338 P.2d 301 (1959). *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 410 P.2d 732 (1966).

Plaintiff objected to the recusal by Judge Fowlie. On review of a perplexing problem such as this one, our duty points toward satisfying the expectations of fairness of a party rather than resolving the interplay of judges in a multi-judge district court. We must never deny to any litigant the right to a fair and impartial trial before a fair and impartial judge—the very essence of justice in our judicial system.

Judge Fowlie's recusal was erroneous.

B. *The presiding judge erred in refusing to honor plaintiff's affidavit of disqualification timely filed.*

This cause was at issue on February 20, 1970, and was tried with Judge Fowlie presiding. The judgment entered on September 20, 1972 was appealed to this Court. After two opinions by this Court and one by the Supreme Court, the case was reversed and remanded for a new trial consistent with the opinion of this Court. The mandate was filed in the office of the district court clerk on December 6, 1974. Twenty months later, Judge Sanchez decided to try this case on the merits. The record does not disclose the date or the procedure by which Judge Sanchez became the presiding judge.

More than six years after the cause was at issue, on July 1, 1976, plaintiff filed an affidavit of disqualification directed to Judge Sanchez. Within a week of plaintiff's attempt to disqualify Judge Sanchez, defendant filed a motion to quash the affidavit relying on the fact that the cause was at issue on February 20, 1970, and the affidavit was not timely filed as provided by §§ 21–5–8 and 21–5–9, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.).

A hearing was held on defendant's motion to quash. Thereafter, the motion was sustained because the affidavit was not timely filed.

The trial court relied on *Gray v. Rozier E. Sanchez and Harry E. Stowers, Jr., District Judges*, and *Robertson v. Honorable Maurice Sanchez, Judge*, supra. *Gray* was a criminal case. *Robertson* was a civil case.

In interpreting § 21–5–8, *Gray v. Sanchez* followed *Beall v. Reidy*, 80 N.M. 444, 457 P.2d 376 (1969). It acknowledged the problems which arise when a party who has not been apprised of the trial judge, needs to later disqualify the designated judge. *Gray* quoted at length from *Beall*. Chief Judge Wood of this Court, speaking for the Supreme Court, said:

". . . [A] party needs to know the name of the judge before whom the case is to be tried *and needs that information early in the litigation.*

. . . Accordingly, it is incumbent upon the judges in multi-judge districts to provide, *by rule*, a method by which the party may know the name of the judge before whom the case is to be tried *and may know the name before the right to disqualify under § 21–5–8, supra, has been lost.*" [86 N.M. at 148, 520 P.2d at 1093.] [Emphasis added.]

*Gray* stated that the Second Judicial District responded to this dilemma. It promulgated specific amendments to the Rules of Criminal Procedure to inform defendants of the names of the possible trial judges. It held that "Through adherence to this new rule, the remedy of provisional disqualification should prove to adequately protect the statutory right of disqualification." [86 N.M. at 148, 520 P.2d at 1093.]

Paradoxically, in the companion civil case of *Robertson*, where no similar rules were adopted for giving notice to parties of the docket assignment, the court did not take judicial notice of the predicament described in *Beall* and recognized in *Gray*. The trial court compounded this oversight by relying on *Robertson* as authority in this civil case.

In *Robertson*, the cause was at issue in February, 1973, and Judge Maurice Sanchez took office on July 1, 1973. Notice was given on August 1, 1973, that Judge Sanchez was assigned to hear motions in civil jury cases. On October 15, 1973, Robertson filed an affidavit of disqualification directed to Judge Sanchez, which affidavit was not honored. Robertson sought a writ of prohibition. The Supreme Court held (1) an affidavit of disqualification must be direct-

ed "only to the judge before whom the case is to be tried *on the merits*," and "in this instance, within ten days after the time for filing a demand for jury trial has expired." [86 N.M. at 149, 520 P.2d at 1094.] [Emphasis by Court.]

The court held the affidavit did not conform to statutory requirements though Judge Sanchez was assigned to try the case *on the merits*, the affidavit was not timely filed, i. e., in February, 1973, five months before Judge Sanchez took office.

The court said:

This result may seem unduly harsh but it is consistent with the clear provisions of the statute.

We read this unduly harsh result to mean this: In every claim for relief filed in a multi-judge district court, each party must file a timely provisional affidavit of disqualification against any non-judge who may subsequently take office as a district judge and be assigned to try the case on the merits.

As in *Beall*, Alaska's Supreme Court declared that the district judges should devise a method by which the assignment of cases to judges should be made sufficiently in advance of trial, with notice to the parties of the assignment so that their rights under the disqualification statute would not interfere with the trial date. *Roberts v. State*, 458 P.2d 340 (Alaska, 1969). Thereafter, the presiding judge of the district entered an order that the cases not at issue would be assigned jointly to the three judges on the date that the case was at issue. *Hartford Accident and Indemnity Company v. State*, 498 P.2d 274 (Alaska, 1972).

Subsequently, the Supreme Court of Alaska held that an action is not "assigned to a judge" within the meaning of the statute providing for disqualification of a judge, "until it has been assigned to a particular judge and a *reasonable attempt has been made to notify the parties before the court of that assignment.*" *Hartford Accident and Indemnity Company* [498 P.2d at 276.] [Emphasis added.]

*Roberts* and *Hartford Accident* stand for the proposition that notice to the parties of the name of a particular judge assigned to try the case is an essential ingredient in the time period fixed by statute, so that the right to disqualify by a party shall not be lost.

*Hartford Accident* cited authority sufficiently analogous that lends support to this proposition. *Marsin v. Udall*, 78 Ariz. 309, 279 P.2d 721, 723 (1955); *Tarsey v. Dunes Hotel, Inc.*, 75 Nev. 364, 343 P.2d 910, 911–912 (1959); *Wolf v. Marshall*, 120 Ohio St. 216, 165 N.E. 848, 849 (1929); *State ex rel. Beeler v. Smith*, 76 Wash. 460, 136 P. 678 (1913). These cases hold that when, upon the assignment of a judge to try a case, the parties cannot comply with the time period of disqualification because of lack of notice regarding the presiding judge, the time period gives way to a party's substantial right of disqualification. *Marsin* said:

Any rule of court that operates to lessen or eliminate the right is of no legal force. [279 P.2d at 723.]

New Mexico has also recognized that the right to disqualify a judge is a substantive right. *Beall*, supra. "A substantial right has been defined as an essential legal right and not a mere technical one." *In Re Egan's Estate*, 155 Neb. 611, 52 N.W.2d 820, 826 (1952). "Moreover, the tendency of modern practice is to yield as little as possible to technicalities and to be more liberal in upholding substantive rights instead of subtle technicalities." *Rapides Grocery Company v. Vann*, 230 La. 829, 89 So.2d 359, 363 (1956). We have a duty to protect the substantive rights of a party.

The trial court's strict adherence to the requirements of § 21–5–8 defeated plaintiff's substantive right to disqualify a judge under the circumstances when it was impossible for plaintiff to meet those dictates due to the gross lack of notice to plaintiff.

It is essential that rules provide a method by which the party may know the name of the judge before the right to disqualify is lost. Not only did plaintiff lack notice of the reassignment of judges, but the reassignment was also defective.

On November 4, 1974, the Second Judicial District Court Administrator issued to the district court clerk assignment procedures to be used in civil cases when disqualifications and/or recusals are entered.

Pertinent procedures adopted were:

2. When a Judge is disqualified or he recuses himself, the case will be reassigned to the next Judge who is due a replacement assignment because of his previous disqualification or recusal.

3. An equal distribution of cases will be maintained among the Judges by making replacement assignments for *each* case which he is disqualified or on which he recuses himself. Such replacement assignment of cases will be made *only* from cases where disqualifications and/or recusals of other Judges were made and *not* from the new case filings. [Emphasis by Administrator.]

At a hearing on defendant's motion to quash plaintiff's affidavit of disqualification the district court clerk testified that she did not recall having made the actual reassignment of this case to Judge Sanchez. Since she did not note the matter, in all probability, the assignment was not made. The chief deputy clerk testified that it was not her practice to send notice of reassignment of judges to attorneys of record, nor was she aware of any procedure whereby a party is advised of the name of the judge. The rules do not provide for notification.

The evidence is undisputed (1) that Judge Sanchez was not assigned to try this case; (2) even if he were, he was not assigned in compliance with the rule on "equal distribution"; and (3) that plaintiff was not notified of any assignment of the case to Judge Sanchez.

The affidavit of disqualification filed July 1, 1976 was timely filed rendering Judge Sanchez without power or jurisdiction to proceed further with the action.

The trial court erred in refusing to honor plaintiff's affidavit of disqualification.

C. *Denial of plaintiff's right to proceed on medical malpractice was reversible error.*

 We hold that denial of plaintiff's right to proceed on the theory that defendant performed an operation contrary to the standards of a surgeon was reversible error for three reasons: (1) Although defendant's motion for directed verdict should have been sustained and the cause reversed for failure of the plaintiff to make a case on proximate cause, it was not remanded with instructions to grant an outright reversal on this issue; (2) Plaintiff was not granted a partial new trial; and (3) Defendant made an untimely motion to delete negligent surgery as an issue in the case and waived it.

 Opinions often conclude with "a new trial consistent with this opinion." What is meant by this phrase? It is vague and indefinite. Ofttimes, it requires a Houdini to resolve it. See *Varney v. Taylor*, 79 N.M. 652, 448 P.2d 164 (1968); *Knollenberg v. State Bank of Alamogordo*, 40 N.M. 284, 58 P.2d 1195 (1936). Appellate judges who use this language escape the burden of explanation and place the burden on the district judge to interpret its meaning. We should avoid the use of this phrase.

*First*, defendant was not granted an outright reversal.

One of plaintiff's claimed act of malpractice was:

The defendant proceeded to perform an operation upon him and in so doing failed to possess and apply the knowledge and use the skill and care which would be used by reasonably well qualified specialists in the same field practicing under the same circumstances.

*Demers*, (85 N.M. at 643, 515 P.2d at 647).

Subsequently, this Court said:

. . . Since there was no expert testimony, there was no issue as to causation and the trial court incorrectly denied defendant's motion to direct a verdict on

the issue of negligent surgery. We must therefore reverse.

*Demers*, (87 N.M. at 53, 529 P.2d at 279).

The opinion concluded:

The case is reversed and remanded to the trial court *for a new trial* consistent with this opinion. [Emphasis added.] [87 N.M. at 54, 529 P.2d at 280.]

The mandate read in pertinent part:

WHEREAS . . . an opinion was handed down and the judgment of the Court of Appeals was entered reversing the judgment of the District Court *and remanding said cause to you for a new trial* ;

NOW, THEREFORE, this cause is remanded to you for such further proceedings therein as may be proper, consistent and in conformity with said opinion and judgment of the Court of Appeals. [Emphasis added.]

This case was not remanded to enter judgment on the directed verdict.

It appears from the language in the opinion that the trial court incorrectly denied defendant's motion for a directed verdict on the theory of negligent surgery because plaintiff produced no expert testimony to establish proximate causation. The opinion, however, did not conclude that "We hold that the issue of negligent surgery shall not be retried."

When a motion for directed verdict should be sustained and the case reversed because plaintiff did not establish a case, it does not mean that the case should be remanded with instructions to render judgment. In an identical situation, *Bryne v. Prudential Ins. Co. of America*, 88 S.W.2d 344, 347 (Mo.1935), the court said:

. . . It is the settled practice of appellate procedure that a case should not be reversed, for failure of proof, without remanding unless the appellate court is convinced that the available essential evidence has been fully presented and that no recovery can be had in any event. While essential proof is wanting herein, nevertheless the general aspects of the situation which appears to have

existed justify, we think, the assumption that upon a retrial the plaintiff can likely adduce the proof necessary to make out a prima facie case.

This appellate practice has been followed in New Mexico. *Morstad v. A. T. & S. F. Ry. Co.*, 23 N.M. 663, 170 P. 886 (1918); *State ex rel Bujac v. District Court*, 28 N.M. 28, 205 P. 716 (1922).

In *Morstad*, the court, upon reversal of the judgment in favor of plaintiff, said:

. . . It does not appear from the record that he may not be able to show upon another trial that he was entitled, without executing any release, to transportation over the defendant's railroad to the hospital for treatment. It is therefore proper to submit such question to the consideration of a jury rather than to enter judgment at this time against the plaintiff. [23 N.M. at 673, 170 P. at 890.]

*Bujac*, relied upon by defendant, involved a second appeal from a judgment on the mandate. In the first trial Bujac was successful. On appeal, the judgment was reversed because Bujac failed to establish his claim. He offered no corroborating testimony as required. The opinion concluded:

"It follows from all of the foregoing that the judgment of the court below was erroneous, and should be reversed, and the cause remanded, with directions to proceed in accordance herewith; and it is so ordered." [28 N.M. at 29, 205 P. at 717.]

After *Bujac* was re-docketed in the district court, judgment was entered against Bujac. Prior thereto, notice was given Bujac of the proposed judgment, and without objection, the judgment was entered. Subsequently, Bujac sought to vacate the judgment but failed. He appealed. On affirmance the court said:

*It is to be observed that in the opinion and mandate in the former case this court did not direct the district court to enter judgment dismissing the claim of the claimant.* . . . To proceed in accordance with the mandate and opinion would be to enter the judgment which

the court has entered in the *absence of some application on the part of the claimant to submit further proof by way of corroboration, or other matters of legal significance*, showing that the order should not be entered. [Emphasis added.] [28 N.M. at 30–31, 205 P. at 718.]

*Bujac followed Morstad.*

During thirty pages of rambling argument by opposing counsel, plaintiff's attorney stated that the issue was whether the negligence of the defendant performed during surgery was the proximate cause of plaintiff's injuries; that there was no medical evidence that the necrosis was caused by the shortness of the stoma. " . . . [W]e can establish by competent evidence that proximate cause . . . and I think it would be error for this Court to restrict the issues in view of the language of the mandate and of the opinion of the Court of Appeals ·. . . I agree that if, after we present our evidence, if we have failed to submit evidence of proximate cause in accordance with the terminology of the opinion, the court should direct a verdict." We agree. Plaintiff offered expert evidence of proximate cause, but the court refused it.

The trial court erroneously ruled that the question of negligent surgery had already been adjudicated and no further adjudication was necessary.

*Second*, plaintiff was not granted a partial new trial.

In a similar case, the Supreme Court of Alaska said:

> Consequently, we hold that the issues of methodology and informed consent may not be retried, but a new trial regarding the issue of proper supervision is required.

The opinion concluded:

> Affirmed in part, reversed, in part, and remanded for proceedings consistent with this opinion.

*Poulin v. Zartman*, 542 P.2d 251, 276 (Alaska, 1975). *Poulin* held that a Supreme Court may grant a *partial new trial*, setting aside only so much of a judgment as is affected by error and allow the balance of the judgment to remain intact.

In the instant case, this Court did not grant a partial new trial. The opinion granted plaintiff a new trial. It did not state that negligent surgery shall not be retried, and that a new trial is granted only on the issue of legal consent. Under this rule, the trial court committed reversible error.

*Third*, defendant's motion to delete negligent surgery was not timely filed. The mandate issued after the appeal of the first trial was filed in the district court on December 6, 1974. Over 20 months later, on August 19, 1976, on the morning of trial, defendant requested the district court to enter judgment that negligent surgery be deleted as an issue in the case. No prior notice was given plaintiff. The trial court stated that this matter should have been determined by judgment on the mandate immediately after the mandate issued from this Court. This was not done.

During this 20 month period, defendant had knowledge of the right to proceed to obtain judgment on the mandate. Inexcusable delay in asserting a right until the morning of trial is so untimely as to catch off guard an opposing party and the trial judge. It unduly interferes with, or hinders the orderly prosecution of the trial and lays a heavy burden on the judge and the opposing party. It is both inequitable and unfair.

This conduct can be likened to waiver, the intentional relinquishment or abandonment of a known right, *Cooper v. Albuquerque City Commission*, 85 N.M. 786, 518 P.2d 275 (1974), and laches, inexcusable delay in asserting a right, and implied waiver arising from knowledge of existing conditions and acquiescence in them. *Pratt v. Parker*, 57 N.M. 103, 255 P.2d 311 (1953). See also, *Cave v. Cave*, 81 N.M. 797, 474 P.2d 480 (1970).

In this sense, equity should be a controlling factor. Black's Law Dictionary (Rev. 4th Ed.) 634 (1968) defines equity in its broad and restricted sense. In its broadest sense, it denotes the spirit of fairness

and justness, and in its *restricted* sense, it notes equal and impartial justice as between two persons whose rights or claims are in conflict.

As a matter of equity, defendant waived his right to seek the deletion of plaintiff's claim as to negligent surgery.

We conclude that negligent surgery has been preserved as an issue in a new trial of this case.

D. *The trial court did not follow the doctrine of law of the case.*

■ "The doctrine of law of the case has long been recognized in New Mexico, since before statehood . . . and since after statehood." *Ute Park Summer Homes Ass'n v. Maxwell Land G. Co.,* 83 N.M. 558, 560, 494 P.2d 971, 973 (1972). This doctrine means that the law applied on the first appeal of a case is binding on the second appeal. This rule applies not only to questions specifically decided, but also to those necessarily involved, and those questions which could have been so raised. *Farmers State Bank of Texhoma v. Clayton Nat. Bank,* 31 N.M. 344, 245 P. 543 (1926).

■ In the first trial, the court instructed the jury: (1) that a fiduciary relationship exists between doctor and patient; (2) that an adult person of sound mind has the right to determine for himself whether surgery shall be performed upon him; (3) that it is malpractice to perform an operation upon a patient other than which has been explained and agreed to by the patient; (4) that a physician violates his duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment; (5) U.J.I. 17.6 on circumstantial evidence.

These instructions became the law of the case and the failure to give them was reversible error.

■ Claims litigated and decided in the first trial and sustained on appeal also became the law of the case. In the first trial, plaintiff gave express consent to defendant to perform an operation described as "Re-pair Ventral Hernia," but claimed that a "revision of ileostomy" was performed without the "legal consent" of plaintiff. During the repair of the hernia, defendant revised the ileostomy.

*First,* we have not determined whether a revision of the ileostomy was necessary during repair of the ventral hernia. If defendant presents evidence of necessity, an issue of fact exists whether revision of the ileostomy constituted an act of medical malpractice even without the consent of plaintiff.

*Second,* we have decided that defendant did not have "legal consent" to perform a revision of the ileostomy.

In the first opinion on appeal, this Court said:

We have reviewed the record and find that plaintiff's theory of *lack of consent* to surgery is supported by substantial evidence. [Emphasis added.] [85 N.M. at 644, 515 P.2d at 648.]

In the second opinion, this Court said:

Since our prior opinion decided there was a *lack of consent,* it goes without saying, there could not have been any *informed consent.* [Emphasis added.] [87 N.M. at 53, 529 P.2d at 279.]

■ "Legal consent" as used in U.J.I. 8.3, that "A doctor must obtain a legal consent," means actual or express consent according to law. See, 85 N.M. at 649, 515 P.2d 645, 653, Sutin, J., Specially Concurring. This Court decided that there was a "lack of consent."

■ "Informed consent" means an "educated consent," a duty to make a full and frank disclosure to the patient of all pertinent facts relative to the surgery. See, 85 N.M. at 651–653, 515 P.2d 645, Sutin, J., Specially Concurring. The use of the words "informed consent" in the second opinion was erroneous because it was not an issue in the first trial, nor one that was involved nor one that could have been decided. It is, of course an issue that can be raised in the third trial of this case.

Nevertheless, in the third trial, the court shall properly instruct the jury that plaintiff did not give legal consent to defendant to perform a revision of the ileostomy and a revision of the ileostomy constituted an act of medical malpractice; that the issue of proximate cause of damages by reason thereof is a question of fact for the jury. However, if the revision of the ileostomy was necessary to perform a repair of the ventral hernia, consent of the plaintiff was not required. We leave the language to be used within the discretion of the trial court, and its instruction on this issue shall be final and unappealable.

Defendant contends that the wisdom of the law of the case is such that there must be an end to litigation at some time, citing *Knollenberg*, supra. Yet *Knollenberg* reversed for the third time with directions to the district court to set aside the judgment.

On the second trial, the court ruled that the only issue to be submitted to the jury was whether defendant obtained "legal consent" from the plaintiff before performing an operation.

The death knell rang upon plaintiff. In fact, the trial court instructed the plaintiff out of court when the following instructions were given:

(1) There is no issue of Dr. Gerety's competency to perform the surgery of November 13, 1976. You are to disregard any suggestion that the physician did not possess the knowledge and ability to perform that surgery.

(2) Neither the fact that an unintentional result occurred, nor the fact the plaintiff claims injuries therefrom, nor the fact that this lawsuit was filed, is evidence of any malpractice.

The trial court, in effect, directed a verdict for defendant.

This case is reversed and remanded to the district court with the following instructions:

(1) to vacate the judgment entered and grant plaintiff a new trial with Judge Gerald Fowlie presiding;

(2) during the trial of the case, allow plaintiff to produce expert testimony that the necrosis was proximately caused by the alleged shortness of the stoma;

(3) the same instructions shall be given in the third trial that were given in the first trial;

(4) allow defendant to raise as an additional issue on negligent surgery, if substantial evidence is presented, the necessity of revising the ileostomy to repair the ventral hernia, and to instruct on this issue; and

(5) to instruct the jury on lack of consent as stated in this opinion.

(6) defendant shall pay the costs of this appeal.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ROY G. HILL, District Judge (dissenting).

ROY G. HILL, District Judge (dissenting).

I dissent.

This case is before this court for the third time. In the original decision *Demers v. Gerety*, 85 N.M. 641, 515 P.2d 645 (Ct.App. 1973), a jury decision in favor of the Plaintiff was affirmed. This court held there, among other things, that because the trial court correctly denied directed verdict and judgment n. o. v. motions as to one of Plaintiff's theories "lack of consent to the operation" it was not necessary to decide whether the trial court was also correct as to Plaintiff's other theories. The Supreme Court in *Gerety v. Demers*, 86 N.M. 141, 520 P.2d 869 (1974) reversed, holding that Section 21–1–1(50)(b) N.M.S.A., 1953 (Repl. Vol. 4, 1970) required a decision on the propriety of the trial court's decision to grant Defendant a directed verdict on Plaintiff's other two theories: (1) Negligent Surgery; and (2) Lack of Informed Consent.

In this court's second opinion, *Demers v. Gerety*, 87 N.M. 52, 529 P.2d 278 (Ct.App. 1974), it was determined there was no issue

as to causation as it related to negligent surgery and therefore the trial court incorrectly denied Defendant's motion for a directed verdict on that issue.

On the issue of Lack of Informed Consent, it was simply stated:

"Since our prior opinion decided there was a lack of consent, it goes without saying there could not have been any informed consent."

The case was retried and Plaintiff now appeals presenting ten points for reversal. The majority has reversed the trial court. I would affirm.

*Plaintiff's Request for trial before another Judge*

Plaintiff first argues that the Honorable Gerald D. Fowlie, District Judge, before whom the first trial was conducted, shunned his duty by recusing himself from the retrial. I find nothing in our law that placed a duty on Judge Fowlie to preside at the retrial of this case. *State v. Scarborough,* 75 N.M. 702, 410 P.2d 732 (1966) is no help to Plaintiff. It was not error for Judge Fowlie to have recused himself.

Following Judge Fowlie's recusal, the case was reassigned to the Honorable Harry E. Stowers who eventually recused himself and the case was then reassigned to the Honorable Maurice Sanchez on June 15, 1976.

Plaintiff argues that because Judge Fowlie's recusal eventually led to the assignment of Judge Sanchez, Plaintiff was severely prejudiced. A party to a lawsuit has no right to a particular judge. A party to a lawsuit has the statutory right of disqualification set forth in Section 21–5–8, N.M. S.A., 1953 (Repl. Vol. 4, 1970) as well as the right to disqualify pursuant to Article VI, Section 18, Constitution of New Mexico.

Plaintiff filed an affidavit of disqualification pursuant to the noted section against the Honorable Maurice Sanchez. Judge Sanchez correctly refused to honor the affidavit. Plaintiff's argument on this issue is disposed of completely in *Gray v. Sanchez,* 86 N.M. 146, 520 P.2d 1091 (1974). That case involved the same district judge and

the same factual situation insofar as the timeliness of the attempted statutory disqualification.

In addition to the affidavit of disqualification filed pursuant to Section 21–5–8 supra, Plaintiff sought to disqualify Judge Sanchez pursuant to Article VI, Section 18, Constitution of New Mexico. Plaintiff again relies on *Scarborough,* supra, and again Plaintiff's reliance is misplaced. The Supreme Court there held:

"We now declare, in accord with what appears to be the American rule, that an 'interest' necessary to disqualify a judge must be a present pecuniary interest in the result, or actual bias or prejudice, and not same indirect, remote, speculative, theoretical or possible interest." (Citations omitted)

The court did go on to say that ". . . a person charged with a crime should not be required to proceed to trial before a presiding judge who has openly expressed animosity or hostility". id. 75 N.M. at 709, 410 P.2d at 736. The court also pointed out that in the two cases therein cited, there was proof that the court favored one side over the other. I find no such evidence in the present case. It should also be noted that the decision in *Scarborough,* supra, was based upon the Supreme Court's superintending control over inferior courts as provided in Art. VI, Section 3, New Mexico Constitution. The record here does not reflect any attempt by Plaintiff to prevent Judge Sanchez from proceeding in this cause through the Supreme Court's same power. Judge Sanchez properly refused to allow himself to be disqualified by either the statutory affidavit or the motion pursuant to Article VI, Section 18, New Mexico Constitution.

*Negligent Surgery*

The trial court held that the question of negligent surgery had been adjudicated by this court in *Demers v. Gerety,* 87 N.M. 52, 529 P.2d 278 (1974) and consequently entered judgment for the defendant on that issue (Tr. 127–130). Plaintiff argues that because this court reversed and granted a

new trial, the trial should have been open to all issues. Plaintiff relies on language from 58 Am.Jur.2d New Trial 229; *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 88 N.M. 355, 540 P.2d 835 (1975); *Ortega v. Ortega*, 33 N.M. 605, 273 P. 925 (1928) and *St., ex rel. Bujac v. District Court*, 28 N.M. 28, 205 P. 716 (1922). The Am.Jur.2d citation and *Bendorf* do not support Plaintiff's position. The two New Mexico cases cited support the trial court's ruling.

In *Bujac* the Supreme Court stated:

"A general survey of this whole matter would seem to lead to the conclusion that there is one general, fundamental principle always to be applied, and that is that the appellate court, unless prevented by some limitation upon its powers, should, upon reversal, either render the proper judgment or direct the lower court to do so, except in those cases where such action is prevented by the circumstances, or where legal injustice would thereby result to one of the parties. Ordinarily the parties should go back to the point where the error occurred, and the case should proceed from that point to a conclusion, unless the circumstances prevent such a course. The fact that the infirmity of the case is first disclosed in the appellate court has nothing to do with the matter, and creates new rights in the losing party.

Thus in jury trials if the error occurs prior to verdict there must be a new trial, because the parties cannot be placed in the same position they were in when the error occurred, and before the same jury. This is a rule of necessity. If the error is in the verdict, for example, where it is not supported by substantial evidence, there must at least in civil cases be a new trial, for in such cases there remains no verdict upon which to base the judgment. In such cases, however, it would seem that in the absence of a motion in the trial court for an instructed verdict the complaining party would not be in position to urge the error upon this court, although we might, of our own motion, consider the same. *Sais v. City Electric Co.*, 26 N.M. 66, 188 Pac. 1110. If the error occurred by reason of the court denying a motion for judgment non obstante veredicto, it would be an error of law which should be corrected by directing the district court to enter the proper judgment. If an improper judgment be rendered upon the verdict, the same rule would apply." id. at 50–51, 205 P. at 725. *Bujac* was followed in *Ortega* and both of these cases come within the rule enunciated in 5B C.J.S Appeal and Error, § 1950 at 513 which reads:

"Whether the whole judgment is vacated and set aside, or only a part thereof, depends on whether the reversal is a general one of the whole judgment or decree, or only a reversal of a distinct part of the judgment. If, on appeal from the overruling of a motion to direct a verdict as to a given issue, there is a reversal, it is a holding that, as a matter of law, such issue was proved or disproved; but, where the appeal is from directing a verdict, then the reversal decides nothing, except that it was error to hold below that there was no question for a jury."

The trial court properly refused to allow Plaintiff to proceed on the theory of negligent surgery.

*Physician-Patient Relationship*

In *Demers v. Gerety*, 85 N.M. 641, 645, 515 P.2d 645, 649 (1973), in discussing the physician-patient relationship, it was noted "We begin our discussion by noting that the physician-patient relationship is a fiduciary one" citing *Woods*, supra. In *Demers v. Gerety*, 87 N.M. 52, 529 P.2d 278 (Ct.App. 1974), the quoted remark was explained to mean "only that 'utmost good faith toward the patient' is required in disclosure of the possible consequences of medical treatment."

The comment in the first opinion and the explanation in the second were not intended to indicate a requirement that a trial court instruct on the "fiduciary relationship" between physician and patient. To the contrary, I would hold such an instruction is not required and it was not error for the trial court to refuse to give any or all of Plaintiff's requested Instruction No. 6.

*Damages for Unauthorized Operation Instructions*

The trial court's Instruction No. 1 reads:

"The Plaintiff claims that he sustained damages and that the proximate cause thereof was the following claimed act of malpractice:

The Defendant performed an operation upon the Plaintiff without first obtaining a legal consent.

The Plaintiff has the burden of proving that he sustained damage and that the claimed act was the proximate cause thereof.

The Defendant denies the Plaintiff's claim.

If you find that Plaintiff has proved the claim required of him, then your verdict should be for the Plaintiff. If on the other hand, you find that the claim required to be proved by Plaintiff has not been proven, then your verdict should be for the Defendant."

This instruction when read in conjunction with Instruction Nos. 4 and 6 quoted below show clearly that the jury was instructed on the Plaintiff's theory that the doctor had a duty to have the legal consent of the patient to perform an operation and that an operation performed without that consent regardless of the consequences was compensable:

"A poor medical result is not, in itself, evidence of any wrong doing by the doctor. The Court has determined, as a matter of law, that Plaintiff has failed to prove that the surgery was negligently performed and you must not consider this question in arriving at your verdict."

"A doctor must obtain a legal consent either by or on behalf of his patient before operating on him."

It was not error for the trial court to refuse to give Plaintiff's requested Instruction No. 11:

"Damages arising from an unauthorized procedure may be recovered even though the operation was performed with the utmost care and skill."

*Refused Instructions*

Plaintiff contends it was error for the trial court to refuse to give Plaintiff's requested Instruction Nos. 4, 5, 7, 11, 14, 16 and U.J.I. 17.6. Plaintiff makes two attacks on the trial court's refusal. Plaintiff first argues that because these instructions were given in the first trial of this case they became the law of the case.

The doctrine of law of the case recognized in this state is that the rule applies to questions specifically decided as well as those necessarily included. *Ute Park Summer Homes Association v. Maxwell Land Grant Co.*, 83 N.M. 558, 494 P.2d 971 (1972). I would hold that uncontested instructions given in the trial of a case which is subsequently retried do not fall within the doctrine of law of the case. *Thoroughbred Motor Court v. Allen Co.*, 296 S.W.2d 690 (Ky.App.1956).

*Trial Court's Instructions 4 & 5*

The trial court instructed:

"A poor medical result is not, in itself, evidence of any wrong doing by the doctor. The Court has determined, as a matter of law, that Plaintiff has failed to prove that the surgery was negligently performed and you must not consider this question in arriving at your verdict."

"There is no issue of Dr. Gerety's competency to perform the surgery of November 13, 1967. You are to disregard any suggestion that the physician did not possess the knowledge and ability to perform the surgery."

The function of this court is to correct erroneous results and not to correct errors which even if corrected would not change the result. *Gough v. Famariss Oil and Refining Company*, 83 N.M. 710, 496 P.2d 1106 (1972); *Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (1970). An appellant has the burden of showing he is prejudiced by erroneous instructions. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970).

When the quoted instructions are read in context with all the instructions as they must be they do not present prejudicial error to the Plaintiff.

While I do not approve the specific language of trial court Instruction No. 4, I note that counsel for Plaintiff did invite such an instruction by a persistent attempt to inject the issue of "negligent surgery" into the case. (Tr. 208).

It was not reversible error for the trial court to give its Instructions 4 and 5.