474 P.2d 487

Ray DURRETT, Plaintiff-Appellee,

v.

Kyriakos PETRITSIS, Defendant-Third-
Party Plaintiff-Appellant,

v.

Loretta SIMPIER, now Loretta Brady, Leroy
S. Tipton, Janie Tipton, Third-Party
Defendants-Appellees.

No. 8982.

Supreme Court of New Mexico.

Sept. 14, 1970.

See also, 82 N.M. 4, 474 P.2d 490.

**2**

Wright & Kastler, Raton, for appellant.

Robert S. Skinner, Raton, for Durrett.

William H. Darden, Raton, for Loretta Brady.

## OPINION

McKENNA, Justice.

Durrett, the appellee, sued appellant Petritsis for the balance due on a promissory note in the original amount of $8,500. The complaint alleged that the note was executed by Loretta Simpier (now Mrs. Brady), Janie Tipton and Leroy Tipton, and endorsed by Petritsis. A third-party complaint was then filed by Petritsis against Mrs. Brady and the Tiptons stating that the third-party defendants were primarily liable under the note and demanding judgment against them for any sums recovered by Durrett in the main action. Petritsis denied liability in his answer to the complaint and counterclaimed against Durrett for fraudulent representations in the sale of certain trade fixtures and merchandise, asking for compensatory and punitive damages. Durrett denied any fraudulent representations; Mrs. Brady denied liability in her answer to the third-party complaint. The Tiptons answered separately, admitting their liability under the note. They also alleged that Mrs. Brady had agreed to hold them harmless under the note, and prayed for judgment over against Mrs. Brady for any judgment against them.

All of this arose out of the sale of Duds for Dolls, a retail clothing business. The business was operated by Mrs. Brady and Mrs. Tipton after it was purchased. Intermixed in this was a personal relationship between Petritsis and Mrs. Brady. They were keeping company, but the relationship cooled and terminated as the business faltered.

The issues were tried before a jury. The verdicts were for Durrett on the complaint; for the third-party defendants; against Petritsis on his counterclaim, and against the Tiptons on their complaint that Mrs. Brady had agreed to hold them harmless. In answer to a special interrogatory the jury found that Petritsis was the maker and primarily liable on the note. A judgment was entered for Durrett on the note. Judgment was also entered against Petritsis on his third-party complaint. A motion to set aside the verdict on the third-party complaint and enter judgment for Petritsis or, in the alternative, to grant a new trial, was denied.

This appeal attacks the verdicts on the counterclaim and the third-party complaint as unsupported by substantial evidence, contrary to the evidence, and argues also that the motion was erroneously denied for the same reasons.

Durrett and Petritsis entered into a written contract for the sale of Duds for Dolls. The price for the name, trade fixtures and merchandise was $14,500. The sum of $6,000 was paid to Durrett and the balance was evidenced by the mentioned promissory note for $8,500. Petritsis testified that although he originally purchased the business, the third-party defendants took over the sale, signed the $8,500 note to Durrett and that he endorsed the note purely as a surety or for their accommodation. He stated further that he took back their note for $6,400, which sum represented the down payment of $6,000 and a loan of $400 for the business. This second note, however, is the subject matter of a separate dispute. The Tiptons generally agreed with Petritsis' explanation of the transaction, adding that when the business failed to prosper, Mrs. Brady agreed verbally to take it over and hold them harmless.

Mrs. Brady testified that she never authorized Petritsis to buy the business for her and that he bought it himself to provide an income for both of them after their marriage, which never came to pass. Dur-

rett, the seller, testified that at no time did Petritsis ever say that Mrs. Brady and the Tiptons were the owners. There was also evidence that after the business ran into financial troubles, Petritsis tried to resell it back to Durrett and also to another party. There was testimony that Petritsis had the "girls" (Mrs. Brady and Mrs. Tipton) sign the $8,500 note to have them "be responsible." What this meant was a matter of conflicting evidence. Suffice it to say that there was conflicting evidence on other material aspects of the transaction.

As to the counterclaim, the contract of sale referred to an itemized list of trade fixtures to be attached as an exhibit to the contract, but it was never attached. The evidence showed that some of the trade fixtures in the store belonged to the landlord, not Durrett. Petritsis claimed he paid for all of the trade fixtures in the store. Mrs. Brady testified that she was present at the taking of the inventory on behalf of Petritsis and that an itemized list was prepared. This list was introduced. The landlord's testimony was that none of the fixtures he owned appeared on the list.

The remaining portion of the counterclaim also claims fraudulent representations in the transfer of certain items of the merchandise inventory. Prior to the sale, these items had been marked down by Durrett for quick sale or as loss leaders. The markdown had been accomplished by running a line through the original retail price and adding the lower sales price. Before the inventory was taken, the seller's wife erased the lower sales price on each of these items, thereby restoring its original retail price. The contract of sale called for the purchase of all the merchandise at a percentage of the retail price. The seller's wife testified that she erased the lower sales price in order to have these items reflect the true retail price for the taking of the inventory. Petritsis paid the higher price for these few items.

We have often said that the presumptions are in favor of verdicts and the facts are to be viewed in the aspect most favorable to the prevailing party. We will indulge all reasonable inferences in support of the verdicts, disregarding all inferences or evidence to the contrary. It is for the jury, not us, " [to] weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies." Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 89, 428 P.2d 625, 628 (1967); Sauter v. St. Michael's College, 70 N.M. 380, 386, 387, 374 P.2d 134 (1962). As to fraudulent conduct, it is never presumed and each of its necessary elements must be shown by clear and convincing evidence. Sauter v. St. Michael's College, supra, at 385, 374 P.2d 134. The jury was so instructed by the court.

Viewing the evidence from the above rules and standards, we believe there is substantial evidence to support the verdicts. Substantial evidence is relevant legal evidence which a reasonable person would accept as adequate to support a conclusion and it is that which establishes facts from which reasonable inferences may be drawn. Wilson v. Employment Security Commission, 74 N.M. 3, 8, 389 P.2d 855 (1963); Brown v. Cobb, 53 N.M. 169, 172, 204 P.2d 264 (1949); Tapia v. Panhandle Steel Erectors Co., supra.

Rather than one strictly mercantile, a close personal relationship between Petritsis and Mrs. Brady was clearly established. She did not participate in the negotiations with Durrett, and Petritsis later attempted to resell the business. No instrument was ever introduced showing any conveyance of the business to Mrs. Brady and the Tiptons. All of this manifested his ownership. From these facts and others which we have narrated, together with their permissible inferences, the jury believed that the business was purchased and retained by Petritsis as his

**4**

own and that he was primarily liable on the note. It was for the jury to determine credibility and reconcile any contradictions of testimony.

■ As to the claim of fraudulent representation in the sale of the trade fixtures, it seems quite clear from the introduced list of trade fixtures and the testimony of the landlord, that Durrett never intended to sell all the fixtures in the store, but only his own. Admittedly, the question is much closer as to the items of merchandise, for the change in the prices was done prior to the taking of the inventory and apparently without the knowledge of Petritsis. But bearing in mind the rules and standards above set forth governing our review, we must conclude that the jury had sufficient basis for deciding that such action was taken in accordance with Durrett's view of the contract, as was testified, rather than with an intent to deceive. We are not called upon to decide whether Durrett's interpretation of the contract was correct but only if fraudulent representations victimized Petritsis.

■ In connection with the third-party complaint, there is one additional aspect which deserves notice. Mrs. Brady denied liability under the $8,500 note, but the Tiptons admitted liability. After hearing all the testimony, the jury obviously believed Mrs. Brady, for it decided for *all three* third-party defendants against Petritsis, and in its answer to the special interrogatory found that Petritsis was the maker of the note and primarily liable. Petritsis' motion to set aside the judgment on the third-party complaint referred to the admission of liability by the Tiptons. But this was not binding on Mrs. Brady.

■ The court instructed the jury that Petritsis had the burden of proving that Mrs. Brady and the Tiptons were the principal debtors and the true owners of Duds for Dolls, or, "if you find that in fact Petritsis was the principal debtor and the true owner * * *," then a verdict is to be returned in favor of Mrs. Brady *and* the Tiptons on the third-party com-

plaint. Petritsis did not object to this instruction nor tender an instruction of his own. If the court's instruction was erroneous, Petritsis did not preserve the error for our review. Rule 51(1) (i) (§ 21-1-1(51) (1) (i), N.M.S.A.1953); Hudson v. Otero, 80 N.M. 668, 671, 459 P.2d 830 (1969). Furthermore, whether Petritsis was primarily liable or not was the subject of conflicting evidence. It was for the jury to decide where the truth was.

■ The petition by appellees Durrett and Mrs. Brady for damages for taking an appeal which they allege was solely for the purpose of delay and to cause further expense, is denied. "Although we have found the appeal to lack merit, it does not follow that it was not in good faith." Prager v. Prager, 80 N.M. 773, 461 P.2d 906 (1969); Holman v. Oriental Refinery, 75 N.M. 52, 59, 400 P.2d 471, 476 (1965).

The judgments are affirmed. It is so ordered.

COMPTON, C. J., and WATSON, J., concur.