**General Motors Acceptance Corporation,**
**Appellant,**
v.
**James L. Bitah,**
**Appellee.**
**Decided August 11, 1988**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

James B. Collins, Esq., Albuquerque, New Mexico, and James Jay Mason, Esq., Gallup, New Mexico, for the Appellant; Thomas J. Hynes, Esq., Farmington, New Mexico, for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

### I

General Motors Acceptance Corporation (GMAC) appeals a judgment rendered against it in Shiprock District Court in the amount of $85,000.00 for fraudulent misrepresentation.

Plaintiff James L. Bitah purchased a truck in 1979 from Smoak Chevrolet in Farmington, New Mexico. Bitah financed his purchase through GMAC. In 1981, Bitah was employed with Stearns-Roger at the San Juan Power Plant near Farmington, and participated in a carpool to get to work. When it was not his turn to drive to work, Bitah parked his truck at Frank's Grocery Store in Teec Nos Pos, Navajo Nation (Arizona) for the day. Teec Nos Pos is located on the Navajo Reservation.

On August 24, 1981, Bitah left his truck at Frank's Grocery Store at approximately 6:00 a.m. When Bitah returned at 5:00 p.m., his truck was gone. Bitah was three months behind on his truck payments on this date. Bitah did not report his truck as stolen to the Navajo Police until August 27, 1981.

GMAC sent Bitah a repossession notice on August 26, 1981, stating that his truck was being held at Smoak Chevrolet, and that he must pay $2,892.06 by September 8, 1981, or the truck would be sold for the unpaid balance. On September 5, 1981, Bitah went into Smoak Chevrolet to pick up his personal belongings which were in the truck when it was taken. Bitah chose not to pay the

$2,892.06 that was due. The truck was subsequently sold at an auction.

The testimony at trial as to how the truck came into Smoak Chevrolet's possession was conflicting. Bitah's sister-in-law, Carol Bitah, testified that on August 24, 1981, she was working at the Teec Nos Pos Trading Post when she saw three white men around Bitah's truck at Frank's Grocery Store, three quarters of a mile away. She testified that two of the men drove off in the truck and that she recognized one of them as Rodney Slade, whom she knew worked for GMAC repossessing vehicles. Ms. Bitah further testified that when she saw Bitah a week later, she told him that she had seen Rodney Slade and another white man driving his truck on August 24, 1981.

Ms. Bitah's deposition testimony, taken August 22, 1985, conflicted with her trial testimony. In the deposition, she testified that she was not sure that it was Rodney Slade in the truck, and she could not identify any of the three men in the parking lot of Frank's Grocery Store.

Slade denied having taken the truck. He testified that he was looking for the truck on August 24, 1981, at the San Juan Power Plant and at a Farmington, New Mexico bar, but he claimed that he did not enter the Navajo Reservation that day. His daily activity report for August 24, 1981, corroborates this testimony.

Slade further testified that on August 25, 1981, he was advised by GMAC that the truck had been found abandoned near Cortez, Colorado and that the towing service, Conoco Corners, would bring the truck to Smoak Chevrolet. Slade inventoried the truck at Smoak Chevrolet on August 26, 1981, and he also wrote up a repossession report. At the time of trial, Slade no longer worked for GMAC.

Bitah continued to work for Stearns-Roger for nine months after his truck was taken, making approximately $300.00 per week. He claimed that he was laid off because he had no transportation, and he had not worked since being laid off because of no transportation. Bitah offered no explanation for why he did not obtain a working vehicle during those nine months of employment after August of 1981. Further, Bitah admitted under cross-examination that he had volunteered to be laid off because he had transportation problems.

The claim of fraudulent misrepresentation arose from events in March of 1984. Bitah's lawyer wrote the Pueblo, Colorado office of GMAC advising GMAC that he did not believe that the vehicle had been lawfully repossessed, but rather believed that someone representing GMAC had taken the vehicle off the Navajo Reservation on August 24, 1981. The letter asked GMAC to provide some verification from the Cortez towing service as to how the vehicle came into the towing service's possession, to inform the writer whether GMAC had an extra set of keys to the vehicle, and to clarify whether the vehicle was repossessed at GMAC's request.

A Mr. Rocco replied by letter dated March 13, 1984, advising Bitah's lawyer that GMAC's switchboard operator had received a telephone call from an unidentified individual on August 24, 1981, informing them that a vehicle covered under a GMAC contract was on their property. The caller hung up before the col-

lection department picked up the line. The letter further stated that a Mr. Waddops from Conoco Corners Towing Agency had stated that he received a telephone call requesting that the 1979 Chevrolet pickup be picked up for safekeeping from a bar ditch near the KVFC Radio Station in Cortez, Colorado. Mr. Rocco wrote that GMAC did not have any keys to the pickup truck. Mr. Rocco further wrote that according to Slade's itinerary for the day in question, he was not in the area where, according to the police report, the vehicle had been taken.

After Bitah saw this letter, he went to Cortez, Colorado and discovered that there was no stolen vehicle report on his truck on file with the Cortez Police Department. Bitah also spoke with a Mr. Norman Watts at Conoco Corners, but he did not see any tow-in report. The testimony is unclear on whether Bitah asked to see such a report. The testimony is also unclear on what Bitah spoke to Mr. Watts about.

On March 15, 1985, Bitah filed a suit against GMAC for wrongful repossession of his truck and for fraudulent misrepresentations made in the letter of March 13, 1984. The wrongful repossession claim was dismissed because it was barred by the two year statute of limitations. Because the letter was not written until 1984, the claim for fraudulent misrepresentation was not barred; therefore, it was allowed to go forward.

Bitah never testified at trial that he believed or relied on any of the statements in the March 13, 1984 letter. There was no testimony that he did anything, or that he refrained from taking any action, as a result of receiving that letter.

Bitah introduced no evidence regarding Mr. Rocco's authority to speak on behalf of GMAC, Mr. Rocco's independent knowledge, his intent, what investigation he had done, or his purpose in writing the letter.

During the trial, the judge allowed Bitah's attorney to ask Slade whether he had been involved in another lawsuit in which GMAC was sued over repossession of a vehicle. Mr. Slade answered in the affirmative, after strenuous objections by GMAC's attorney had been overruled.

At the close of Bitah's case in chief, and again at the conclusion of the trial, GMAC moved for a directed verdict. The district court denied both motions. The jury found that GMAC was guilty of fraudulent misrepresentation and awarded Bitah $85,000.00.

GMAC appealed to this Court on June 11, 1987. We granted the appeal on the following issues: (1) Whether the district court erred in denying GMAC's motions for a directed verdict; and (2) Whether the district court erred in allowing Bitah's attorney to examine Slade about other claims of wrongful repossession. Because this appeal can be decided on the first issue, we need not address the second issue.

## II

### A

In considering whether the district court erred in denying GMAC's motions for a directed verdict, this Court is mindful of the presumption in favor of verdicts. In reviewing a decision to deny a directed verdict motion, the facts should be viewed in the light most favorable to the prevailing party. *Durrett v. Petritsis*, 82 N.M. 1, 474 P.2d 487, 489 (1970). Where reasonable minds may differ as to inferences to be drawn or conclusions to be reached from the evidence, the controversy is properly submitted to a jury. Conversely, if the evidence is such that reasonable minds could not differ, and the plaintiff could not prevail, then the district court must grant a directed verdict.

### B

For a plaintiff to prevail in a claim for fraudulent misrepresentation, the plaintiff must prove that: (1) the defendant made a false representation; (2) the defendant knows or believes that the representation is not as the defendant represented, or that the representation was recklessly made; (3) the defendant intended to deceive or to induce the other party to act or refrain from action in reliance on the misrepresentation; and (4) the plaintiff relied on the misrepresentation to his or her detriment.

This is a case of first impression within the Navajo Nation. We do not have a statute addressing fraudulent misrepresentation, so resort to state case law is most helpful.

Fraudulent conduct is never presumed, neither should its existence rest on mere suspicion or surmise. *Durrett v. Petritsis*, 82 N.M. 1, 474 P.2d 487, 489 (1970); *Shaw v. Board of Educ. of Village (Town) of Hobbs*, 38 N.M. 298, 31 P.2d 993, 998 (1934). Each of the essential elements for fraudulent misrepresentation must be proven by clear and convincing evidence. *Durrett v. Petritsis*, 474 P.2d at 489; *Hockett v. Winks*, 82 N.M. 597, 599, 485 P.2d 353, 355 (1971). The standard of clear and convincing proof must be strictly adhered to, because a charge of fraud can damage a person's reputation with the mark of dishonesty. *Treider v. Doherty & Co.*, 86 N.M. 735, 527 P.2d 498 (Ct. App.), *cert denied*, 86 N.M. 730, 527 P.2d 493, 500 (1974).

### C

In order for Bitah to have properly prevailed on the merits, he must have proven each of the four elements of fraudulent misrepresentation with evidence so clear and convincing that the opposition's evidence was plainly outweighed.

The fraudulent misrepresentation claim at issue here is based solely on the letter written on March 13, 1984. Bitah's assertion on appeal that there were mate-

rial misstatements in the repossession report, or that the jury believed there were, is totally inappropriate. Not only did Bitah not argue this point at trial, the repossession claim was dismissed. Furthermore, Bitah's claim for fraudulent misrepresentation was based solely upon the March 13, 1984 letter and not upon other alleged misstatements in other documents. If the jury included any belief about the repossession report in their deliberations, their verdict is faulty.

A jury could reasonably find that Bitah established the first element of fraudulent misrepresentation. Although neither party had absolutely conclusive evidence proving whether the defendant made a false representation in the March 13, 1984 letter, Bitah had a witness to testify to the repossession on the Navajo Reservation, while GMAC could not offer any independent witnesses, other than Slade, to prove that the truck was not repossessed from the Navajo Reservation. The jury certainly has the duty to decide which witness to believe, and here, they chose to believe Ms. Bitah. From this evidence the jury can find a false representation in the letter.

Bitah failed to prove that Rocco knew or believed that the representations he made in his letter of March 13, 1984 were untrue. From the evidence given, it appears that Rocco did not know that the information he gave Bitah was false. Rocco was merely passing on what was told to him from other sources. If Rocco failed to investigate before writing the letter, he may have been reckless. However, Bitah failed to prove that no one conducted an investigation; the only evidence he introduced showed that Slade knew of no investigation. Rocco may have been reckless. However, Bitah failed to prove he was, so Bitah failed to prove the second element of fraudulent misrepresentation.

The third element of fraudulent misrepresentation clearly was not established. Rocco was not called as a witness, and Bitah offered no clear evidence from which the jury could determine Rocco's intent in writing his letter. Further, GMAC could not have intended that Bitah act or refrain from action in reliance on the misrepresentation, because the statute of limitations had run on any wrongful repossession claim long before the March 13, 1984 letter was written. In other words, GMAC could not have intended that Bitah lose his suit for illegal repossession by relying on the letter, because the time for filing suit for illegal repossession had expired at the time the March 13, 1984 letter was written.

Bitah also failed to prove that he relied to his detriment on the misrepresentation. Because two and one half years went by between the repossession and the letter, Bitah cannot seriously claim that his lack of employment or lack of a vehicle was due to detrimental reliance on the letter. Bitah's argument that he lost his job due to a lack of transportation is something more relevant to the illegal repossession claim than to what was said in the letter. The evidence shows that Bitah had been unemployed for some time before the letter was written. Bitah had ample opportunity in the nine months after his truck was repossessed to obtain another vehicle. Further, Bitah volunteered to be laid off. Even if Bitah did believe that his truck was repossessed off the reservation as stated in the March

13, 1984 letter, and later he found to the contrary, he did not rely to his detriment on that information, because his claim for wrongful repossession was barred by then.

We have reviewed this matter in the light most favorable to Bitah, yet we still are not persuaded that reasonable minds could differ on the evidence presented. The jury clearly misunderstood the issue properly before them. It appears that they found an illegal repossession and based their award upon damages resulting from the illegal repossession. Plaintiff-Appellee Bitah did not prove all four elements of his claim of fraudulent misrepresentation by clear and convincing evidence. Accordingly, we hold that the district court erred by not directing a verdict for GMAC.

The judgment of the district court is reversed and judgment shall be entered for GMAC.